### In re MAJORS.

(District Court, D. Oregon. April 16, 1917.)

No. 3987.

1. BANKRUPTCY ⬤➡399(3)—EXEMPTIONS—FRAUD.

Where a debtor, who had arranged to rent a farm and the equipment thereon, thereafter purchased part of the equipment for the purpose of claiming it as exempt from liability for his debts, under L. O. L. § 227, giving him an exemption in such property in kind, but not in money in lieu thereof, and very shortly thereafter filed a voluntary petition in bankruptcy, the purchase of the property was a fraudulent attempt to

create a preference in favor of himself, and his claim of exemption was properly denied.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 657, 669.]

2. BANKRUPTCY ⬤➝143(11)—RIGHT OF TRUSTEE—INSURANCE POLICY.

Where a policy insured the life of the bankrupt, payable to his wife as beneficiary, without a right to change beneficiaries being reserved, but provided that, on the death of the beneficiary, the insured might designate another beneficiary, and, if he failed to do so, the policy would be payable to his personal representatives, the insured had no right in the policy available as a cash asset, and therefore the trustee acquired no right to the policy under Bankr. Act July 1, 1898, c. 541, § 70a, subd. 1, 30 Stat. 565 (Comp. St. 1916, § 9654) which vests the trustee with the title to property which prior to the filing of the petition the bankrupt could by any means have transferred, or which might have been levied upon and sold under judicial process against him, with a proviso that he may retain a life insurance policy on paying to the trustee the cash surrender value thereof.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 201.]

In Bankruptcy. In the matter of G. W. Majors, bankrupt. The referee entered an order disallowing certain exceptions claimed by the bankrupt and determining that the trustee took no interest in a certain life insurance policy, and both the trustee and the bankrupt seek a review thereof. Order and judgment of the referee affirmed.

Hewitt & Sox, of Albany, Or., for bankrupt.
Hill & Marks, of Albany, Or., for trustee.

WOLVERTON, District Judge. The referee in bankruptcy, on January 29, 1917, made an order in the above matter, whereby he allowed certain exemptions claimed by the bankrupt and disallowed others and determined at the same time that the trustee took no interest in a certain life insurance policy whereby the Dakota Mutual Life Insurance Company insured the life of the bankrupt in the sum of $2,000, payable to his wife as the beneficiary under the policy, if living at the time of his death; otherwise, to his executors, administrators, or assigns.

The trustee and the bankrupt are both seeking a review of the order and judgment of the referee; the former claiming error in the ruling as to the insurance policy, and the latter in not allowing all of the exemptions claimed. The exemptions claimed and not allowed consist of the following property:

Two horses ................................................ $300.00
One wagon, one old buggy. one harness...................... 50.00
Two cows, five swine....................................... 150.00
Hay and other feed provided for the use of said animals.... 50.00

[1] To understand the nature of the controversy, it is necessary to allude to the facts out of which it arose. Some time prior to October, 1916, the bankrupt borrowed $1,200 from the J. W. Cusick & Co. bank. With this, and other money that he had, being then engaged in the farming industry, he purchased stock and farming equipment. On October 2, 1916, he sold at public sale all the personal property then owned by him, consisting of live stock, farm implements, and equip-

ment, except a team which he later sold at private sale. Of the money realized from the sale, he deposited $753.33 in a bank in Albany. Very shortly afterwards, namely, on October 6th, J. W. Cusick & Co. sued the bankrupt, and garnisheed the money in the bank thus deposited. Thereafter the bankrupt purchased the above-described property, which he is claiming as exempt. He frankly admits, in his testimony before the referee, that he put his money into this personal property so that his creditors could not enforce payment against him; in other words, so that he could claim the property as exempt as against their demands. To substantiate this, I need only quote the following:

"Q. Instead of paying your debts, you put it [the money] into exempt property? A. Yes, sir; I had to. Q. Why did you have to? A. Because they would have taken everything I had."

What his indebtedness was at the time he made these purchases does not appear. On October 28th he filed a voluntary petition in bankruptcy, praying adjudication, and by schedule attached showed that his indebtedness amounted to $1,588, and his assets, including the property claimed as exempt, to $1,403.33. It appears that the bankrupt had arranged with one Riley to take his place (farm supposedly) "with everything furnished," but decided, after he had been sued, to buy the exempt property from Riley. This is indicative of the bankrupt's purpose in disposing of all his property, both that which was exempt and that which was not. He did not intend to conduct his industry further with his own implements and equipment, but with such as were to be furnished him by Riley. His direct and especial reason, however, for purchasing the property, was, as he has expressed it, that otherwise his creditors would have taken everything he had. He did not need to own it under present arrangements, but was induced to buy it that he might evade proportionately his liability to his creditors. His voluntarily petitioning so soon afterwards to be adjudged a bankrupt, considering that quite a large portion of his money had been tied up in the bank by garnishment, presents a situation strongly persuasive that he did all this in anticipation of bankruptcy. It is tantamount to creating a preference in favor of himself, which renders it voidable within the spirit of the bankruptcy act.

The local statute relating to exemptions does not, as is the case in other states, grant exemption in money in lieu of property, but only in property in kind. Section 227, Lord's Oregon Laws. The attempt, therefore, to avail himself of the statute by converting the money into exempt property in anticipation of bankruptcy was a fraud upon the creditors, and it has been so held in this circuit in a case of strong analogy to this. Freedman Bros. Co. v. Parker, 186 Fed. 693, 108 C. C. A. 511 (citing McGahan v. Anderson, from the Fourth Circuit, 113 Fed. 115, 119, 51 C. C. A. 92). I am, of course, bound by this authority, which has the further merit of being sound upon principle. It follows that the bankrupt cannot legitimately claim this property as exempt.

[2] As it relates to the insurance policy, if it had been made payable to his wife as beneficiary, without else, it is clear the assured would have possessed no interest in it, which he could have transferred,

or which might have been levied upon and sold under judicial process against him. Central Bank of Washington v. Hume, 128 U. S. 195, 9 Sup. Ct. 41, 32 L. Ed. 370. This case holds that the money to become due under such a policy belongs at the moment it issues to the person named as beneficiary. The policy in question contains the following clause:

"*Change of Beneficiary.*—When the right of revocation has been reserved, or in case of the death of any beneficiary under either a revocable or irrevocable designation, the insured, subject to any existing assignment of the policy, may designate a new beneficiary with or without reserving right of revocation by filing written notice thereof at the home office of the company accompanied by the policy for suitable indorsement thereon. If any beneficiary shall die before the insured, and the insured shall not have designated a new beneficiary, the interest of such beneficiary shall be payable to the insured, * * * executors, administrators, or assigns."

It does not appear that the right of revocation was reserved by the assured; hence the condition under which he might have designated a new or different beneficiary did not exist; nor could it exist until the decease of his wife, if he survived her. In such a case, it would seem that the wife took an interest in the policy, irrevocable except by her consent. Of course, after her death, different relations would prevail. The interest that she possesses in the policy is more than a mere expectancy; it is a life interest, dependent upon her survival of her husband. Can it be said that such a policy, though it has a cash surrender value, is payable to the assured?

The case is unlike In re White, 174 Fed. 333, 98 C. C. A. 205, 26 L. R. A. (N. S.) 451, where, under the policy, the assured himself could surrender it for "paid-up insurance or other value." Nor is it like the case of Mutual Benefit Life Insurance Co. v. Swett, 222 Fed. 200, 137 C. C. A. 640, where there was reserved to the assured the special privilege while the policy was in force of changing the beneficiary, by returning the policy to the company with written request for indorsement of such change on the policy. These cases are illustrative, however, and the converse must be true—that, where the insured has not reserved to himself the right of assignment and change of beneficiary at his will, he can make no such assignment or change without the assent of the beneficiary.

In a comparatively recent case, the Supreme Court has held, construing the provisions of section 70a of the Bankruptcy Act, that it was the purpose of Congress to pass to the trustee that sum which was available to the bankrupt on his policy at the time of bankruptcy as a cash asset; otherwise, to leave to the insured the benefit of his life insurance—the purpose of the act being to vest the surrender value in the trustee for the benefit of the creditors. Burlingham v. Crouse, 228 U. S. 459, 33 Sup. Ct. 564, 57 L. Ed. 920, 46 L. R. A. (N. S.) 148.

No sum under the policy in controversy was, at the time of the institution of bankruptcy proceedings, available to the bankrupt as a cash asset. He could not have assigned or transferred the policy, so as to reduce it to a cash asset. Nor did he have such an absolute interest in the policy that it could have been levied upon and sold under judicial process with effect that the purchaser could demand the surrender

value. Why? Because the wife is entitled to the surrender value in case she survives her husband. Her interest, it is true, is contingent upon her survival; yet nevertheless it is one of which she cannot be divested without her assent. Such being the case, how can it be said that the surrender value was payable to the bankrupt? If he survives his wife, then, under the clause above quoted, he not having designated a new beneficiary, the interest of the present beneficiary is made payable to himself, his executors, administrators, or assigns. Then, and not till then, would the surrender value be payable to himself absolutely. This proves quite conclusively that the surrender value is not now payable to the insured—the bankrupt. In such a case, the effect of section 70a, says the Supreme Court, is "to leave to the insured the benefit of his life insurance."

The referee's order and judgment will be affirmed.