**In the Matter of R. Bruce MARTIN, Bankrupt.**

No. B-56828.

United States District Court
D. Oregon.

April 2, 1963.

Ernest Lundeen, Eugene, Or., for bankrupt.

Darst B. Atherly, Eugene, Or., for trustee.

EAST, District Judge.

The bankrupt seeks a review of the referee's order overruling the bankrupt's objections to the trustee's report of exempt property; in short, to the failure of the trustee and referee to include as exempt property of the bankrupt a certain .308 rifle.

It appears from the transcript of testimony filed herein that: Bankrupt, on May 14, 1962, had cash on hand in the amount of $400.00 as net proceeds from the sale of his realty. He had conferred with his attorney about conserving his funds and the attorney "told me I was allowed the rifle and a pistol and a whole bunch of exempt articles." Bankrupt had decided the $400.00 "was to go—

"A. Hundred and seventy-five for the bankruptcy, which was * * *. I had to do, twenty-five dollars legal fee for the sale of the house and two hundred dollars for the rifle."

On that date he purchased the rifle in question, now claimed as exempt property, from Allied Surplus, a retail store, for $200.00; and

On the following date, May 15, the bankrupt signed the petition and schedules, which were filed, and instituted these proceedings on May 17.

In determining whether the rifle was exempt property, the referee, as directed by § 6 of the Bankruptcy Act (Title 11 U.S.C.A. § 24) was bound by the provisions of O.R.S. 23.160, reading:

"All property * * * of the judgment debtor, shall be liable to an execution, except as provided in this section and in other statutes grant-

ing exemptions from execution
* * *."

and 23.200, reading:

"Every citizen of this state above the age of 16 years shall be entitled to have, hold and keep, for his own use and defense and shall have exempt from execution one rifle or shotgun and one pistol."

However, Gardner v. Johnson, 195 F. 2d 717, 719 (9th Cir., 1952) advises us:

"The exemption here in question is defined by (Oregon) law. The Bankruptcy Act declares the policy of Congress to give effect to state exemption laws. But once bankruptcy has intervened, the time, manner and conditions under which such exemptions may be claimed as against the trustee are matters of federal law, and are determined by the Bankruptcy Act."

It seems the referee took support for his disallowance from In re Majors, 241 F. 538 (D.Or.1917). The bankrupt asserts that Majors is bad advice and urges us to rely upon In re Dudley, 72 F.Supp. 943 (S.D.Cal.1947), affirmed per curiam 166 F.2d 1023 (9th Cir., 1948). A perusal of these two cases reveals that each of them is in harmony with the prevailing rule succinctly stated as follows:

" * * * that the purchase of exempt property by an insolvent debtor on the eve of bankruptcy will not, in itself, permit the trustee to disallow the claimed exemption unless there is evidence of actual fraud." See 49 A.L.R. 918 (citing Forsberg v. Security State Bank, 15 F.2d 499 (8th Cir., 1926); 3 Remington on Bankruptcy 1297; Stricker v. Trullinger, 172 Minn. 547, 216 N.W. 231 (1927); In re Silansky, 21 F.Supp. 41 (E.D.Pa.1937); In re Berman, 31 F.Supp. 926 (E.D.N.Y.1940).

In Dudley, the bankrupt had purchased exempt property about one week before he filed a voluntary petition at a time when he was "heavily in debt and clearly insolvent." At page 947 of 72 F.Supp. we find its thrust:

"And, as there is no showing of actual fraud, the stock is immune against the creditors and never passed to the trustee."

While in Majors, the bankrupt, shortly before filing a voluntary petition, purchased exempt farm equipment, and concerning the transaction Majors testified:

"Q. Instead of paying your debts, you put it (the money), into exempt property?

"A. Yes sir; I had to.

"Q. Why did you have to?

"A. Because they would have taken everything I had."

Majors clarifies its thrust by concluding Majors had made the purchase in order to claim the property as exempt and preserve unto himself the assets, which was "tantamount to creating a preference in favor of himself, which renders it voidable within the spirit of the bankruptcy act." In other words, in Majors, unlike Dudley, the court found that the purchase of exempt property was made with the intent to defeat the claims of his creditors and that this constituted fraud.

In these proceedings, the referee found that Martin's conversion or "change in the status of the property (cash amount of $200.00 into one rifle) effected with a conscious effort to convert nonexempt assets into exempt assets with the purpose of making them unavailable to the trustee in a contemplated bankruptcy proceedings then imminent." This, in the language of Majors, was "tantamount to creating a preference in favor of himself, which rendere[d] it void within the spirit of the bankruptcy act"; in other words, a fraudulent intent and action to retain an asset from the reach of his creditors. There is substantive evidence in the record to support the referee's findings and conclusions, and this court adopts the same as its own. The referee's order should be affirmed.

Counsel for the trustee is requested to submit proposed order.