In the Matter of Frances E. SCHWIN-GLE, a/k/a Frances Elizabeth Schwingle, Bankrupt.

William J. RAMEKER, Trustee, Plaintiff,

v.

Frances E. SCHWINGLE, Conrad J. Schwingle, and Roger Schwingle, Defendants.

William J. RAMEKER, Trustee, Plaintiff,

v.

Frances E. SCHWINGLE, Defendant.

Myles M. STRANG and Bonnie Strang, Plaintiffs,

v.

Frances E. SCHWINGLE, Defendant.

Myles M. STRANG and Bonnie Strang, Plaintiffs,

v.

Frances E. SCHWINGLE, Conrad J. Schwingle, and Roger Schwingle, Defendants.

Bankruptcy No. 78–C–230 (77–BK–855).

United States District Court, W. D. Wisconsin.

Nov. 17, 1981.

William J. Rameker, Madison, Wis., for trustee and plaintiffs.

Hamilton & Mueller, Dodgeville, Wis., for plaintiffs.

Jonathan Hajny, Oregon, Wis., for defendants.

## OPINION AND ORDER

JAMES E. DOYLE, District Judge.

This is an appeal from a judgment of the bankruptcy court. The petition for bankruptcy was filed, and judgment entered, prior to October 1, 1979, the effective date of the Bankruptcy Code of 1978. Rights of the parties, therefore, are governed by the law applicable at the time of filing. 11 U.S.C. § 401(a). Jurisdiction is present. 11 U.S.C. § 67(c).

The bankrupt has requested this court to reverse the decision by the bankruptcy judge that a certain exchange of non-exempt assets for exempt assets on the eve of bankruptcy, with the express purpose of preserving assets from creditors, constituted a fraud on the creditors. On cross appeal, the trustee and creditors seek reversal of that part of the judgment granting relief under § 67(d) of the Bankruptcy Act, rather than that provided by § 815.18(30), Wis. Stat. (1975). On stipulation by the parties, the bankruptcy court made findings of fact summarized below.

### Facts

Frances E. Schwingle, a widow, 79 years of age, was adjudicated a bankrupt on August 5, 1977. The other defendants, Conrad and Roger Schwingle, are her sons.

Howard Hippman was Frances Schwingle's attorney. She owned a farm in Richland County, Wisconsin, on which she lived. Conrad and Roger became interested in purchasing the farm and, in early 1974, Conrad discussed with Hippman the prospect of purchase.

On February 27, 1975, Conrad and Roger purchased the farm for $33,000, giving their mother a mortgage and a note in that sum. The farm consisted of 130 acres, a house, a barn and a silo. Frances Schwingle reserved a life estate in the home. Because the note did not state the principal and interest separately, it was rewritten, reducing the purchase price to $31,730.78 and providing for interest at 4 percent per annum.

On November 12, 1974, prior to Frances Schwingle's sale of the farm to Conrad and Roger, the Strangs had been injured in a collision between their automobile and the automobile driven by Frances Schwingle. As a result, the Strangs brought suit against her and her insurer. On May 17, 1977, the jury returned a verdict against Frances Schwingle in the sum of $162,-000.92. The limit of her liability coverage under the insurance policy was $50,000, leaving her personally liable for the balance. After the verdict, Frances Schwingle conferred with Hippman because of her concern that the Strangs would levy on her assets.

On May 25, 1977, Hippman wrote Frances Schwingle suggesting ways to preserve her assets from recovery by the Strangs. In his letter he proposed that Roger and Conrad pay her the balance owing on the mortgage note and that she use the proceeds to purchase a homestead, or that Roger and Conrad resell the home to her and that she satisfy the mortgage. Hippman's letter

also advised her to file a petition in bankruptcy claiming her homestead exemption after exercising one of the alternatives mentioned. Hippman warned, however, "[y]ou can be sure that if you seek this homestead exemption, you will find yourself in a lawsuit about it either by the trustee in bankruptcy or the Strangs or both."

On June 8, 1977, Hippman again wrote Frances Schwingle, advising her as follows:

As you know the plaintiff will be asking for and will receive judgment against you on the basis of the verdict on June 13, 1977.

I have advised you that prior to that date we will take the nonexempt asset you have (the mortgage note and mortgage) and use that as consideration for you to purchase an exempt asset (your house made a homestead).

I've also previously advised you that taking that action will most likely cause you to be involved in a legal action by the Strangs in an effort to upset your repurchase of the homestead.

It is my opinion based on the research I've done and the conversations I've had with Madison attorneys who work in the bankruptcy court that such an action on your part is perfectly proper. Obviously only the judge will tell us if in fact it was proper but as I said it would appear to be a perfectly legal action to be taken on your part.

On June 11, 1977, following a conference with Hippman, Roger and Conrad conveyed to Frances Schwingle 15 acres of the farm, which included the homestead and the other buildings. In consideration, Frances Schwingle forgave $25,000 of the $30,000 Roger and Conrad owed her on the note and executed a partial release of the mortgage to the extent of the $25,000. Frances Schwingle also executed a will, dated June 11, 1977, devising the 15 acres to Conrad and Roger.

On June 24, 1977, the trial court entered judgment in favor of the Strangs.

Relying on evidence presented at trial and on a stipulation of facts, the bankruptcy judge found that less than two months before she filed her petition for bankruptcy, Frances Schwingle forgave $25,000 owed her by her sons in consideration of their transfer to her of 15 acres of the farm. The judge found also ". . . the design of Mrs. Schwingle and her sons was to thwart the Strangs from collecting the balance of the amount of the judgment against her. There could be no other purpose for the transaction." (Opinion, p. 10).

## Opinion

A finding on motivation is a question of fact, ". . . and the bankruptcy court's findings on [fact] issues are conclusive unless clearly erroneous." *Carini v. Matera*, 592 F.2d 378 (7th Cir. 1979); Bankruptcy Rule 810. Upon review of the stipulation and record at trial, I conclude that none of the findings summarized above under "Facts" as clearly erroneous. I base my opinion, therefore, on all of the facts as found by the bankruptcy court.

1. *Is the homestead exempt under Wisconsin law?*

The first issue posed is whether the property returned to Frances Schwingle by her sons is exempt from execution under § 6 of the Bankruptcy Act, 11 U.S.C. § 24. That provision states:

This title shall not affect the allowance to bankrupts of the exemptions which are prescribed by the laws of the United States or by the State laws in force at the time of the filing of the petition.

Section 815.20, Wis.Stat., exempts from execution a homestead ". . . selected by a resident owner and occupied by him . . . to the extent of $25,000." Nonetheless, § 815.-18(30), Wis.Stat., allows a court to deny that exemption in the case of fraud:

Any or all of the exemptions granted by this chapter may be denied if, in the discretion of the court having jurisdiction, the debtor procured, concealed or transferred assets with the intention of defrauding his creditors.

Whether the "fraud" contemplated in § 815.18(30) was present in this case is uncertain. Wisconsin courts have yet to construe that provision. Rather than speculate on possible construction of Wisconsin law, I will assume the exchange between Frances Schwingle and her sons was not fraudulent, within the meaning of § 815.-18(30). Under this assumption, the homestead is exempt under § 815.20, Wis.Stat., and § 6 of the Bankruptcy Act.

### 2. Was the exchange fraudulent under § 67 of the Bankruptcy Act?

■ The second issue is whether the transaction was fraudulent under § 67(d)(2) of the Bankruptcy Act, 11 U.S.C. § 107(d)(2). That provision states:

> Every transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition initiating a proceeding under this title by or against him is fraudulent ... as to then existing and future creditors, if made with actual intent as distinguished from intent presumed in law, to hinder, delay, or defraud either existing or future creditors.

The transaction between Frances Schwingle and her sons was not, on its face, to the detriment of her creditors. In consideration for forgiveness of the note, she received title to the property at issue. She parted with something of value in exchange for something of value, and the values were equal, as far as the record indicates.

Creditors in this case suffered not because Frances Schwingle disposed of property for inadequate consideration, but because she exchanged a nonexempt asset (the mortgage note) for an exempt asset (the house made a homestead). The dispositive question then relates to the legal significance of a transfer by the debtor of one asset for another of comparable value, where the asset received by the debtor is exempt from execution, and where the debtor effected the transfer with the actual intent to place property beyond the reach of creditors. Specifically, was that transaction entered into "to hinder, delay, or defraud either existing or future creditors," within the meaning of § 107(d)(2)?

Frances Schwingle concedes she intended to preserve her assets from the Strangs but cites In re Dudley, 72 F.Supp. 943 (S.D.Cal. 1947) and Forsberg v. Security State Bank, 15 F.2d 499 (8th Cir. 1926) as authority for the propriety of the transfer.

In Dudley, the bankrupt had purchased exempt property shortly before filing a voluntary petition for bankruptcy. In the bankruptcy court, no evidence was offered bearing on the bankrupt's intent with respect to the purchase. Since the referee failed to find the transfer had been made with intent to defraud creditors, the district court reversed the referee's decision to deny the debtor's exemption. The point of Dudley, I believe, is that acquisition of exempt property with nonexempt funds by an insolvent debtor is not invariably fraudulent.

Forsberg v. Security State Bank, 15 F.2d 499 (8th Cir. 1926) is inapposite because that case, too, involved a claim by creditors that a transfer of nonexempt for exempt assets was automatically fraudulent. The court of appeals in Forsberg reversed a district court decree denying discharge, stating as follows:

> We find in the record no evidence that the bankrupt was actuated by any fraudulent purpose, unless such purpose should be implied from his intentional conversion of nonexempt assets .... We think that, before the existence of such fraudulent purpose can be properly found, there must appear in evidence some facts or circumstances which are extrinsic to the mere facts of conversion of nonexempt assets into exempt and which are indicative of such fraudulent purpose.

15 F.2d at 502. In contrast to the record in Forsberg, the record in the present case offers substantial evidence of the bankrupt's intent.

The problem of intent raised in this case is similar to that addressed in In re Martin, 217 F.Supp. 937 (D.Ore.1963) in which a debtor explained his purchase of a rifle (exempt property under Oregon law) three days before filing for bankruptcy as the only way to stop creditors from taking

"everything [he] had." 217 F.Supp. at 938. Having considered the motivation for the transaction, the court in *Martin* held that a purchase made with intent to defeat the claims of creditors constituted fraud.

■ I believe the *Martin* court correctly construed the Bankruptcy Act with regard to fraud. When effected with actual intent to place property beyond the reach of creditors, the transfer of nonexempt property for exempt property is fraudulent under § 67(d)(2) of the Bankruptcy Act, 11 U.S.C. § 107(d)(2).

3. *Appropriate remedy*

■ A final issue on appeal is whether the bankruptcy judge erred in rescinding the exchange between Frances Schwingle and her sons, rather than allowing the exchange to stand and denying Frances Schwingle the homestead exemption. The bankruptcy court held that "equitable considerations" justified this action pursuant to § 67(d) of the Bankruptcy Act, as an alternative to denial of the exemption under § 815.18(30), Wis.Stat.

The trustee asserts first, that Wisconsin law compels denial of the homestead exemption upon a finding of fraud; and second, that the bankruptcy court misbalanced the equities of the case by deciding not to place the farm in the bankruptcy estate. I conclude the Bankruptcy Act grants the bankruptcy court discretion in its treatment of fraudulent transfers and, absent abuse of such discretion, the decision of the bankruptcy judge should stand.

Section 67(d) of the Bankruptcy Act states, in part:

> A transfer . . . which is fraudulent under this subdivision against creditors . . . shall be null and void against the trustee . . . . Provided, however, that the court may, on due notice, order such transfer or obligation to be preserved for the benefit of the estate and, in such event, the trustee shall succeed to and may enforce the rights of such transferee.

11 U.S.C. § 107(d)(6). This provision directs the court to rescind a fraudulent transfer, but makes available the option of preserving the transfer for the benefit of the bankrupt estate. Only an abuse of the bankruptcy court's discretion would justify reversal of that court's selection of a remedy. The record reveals no such abuse.

As I have noted in part (1) of this opinion, Wisconsin's courts have not decided whether there is fraud within the meaning of § 815.18(30) when a debtor exchanges nonexempt property for exempt property, even where there is clear intent on the part of the debtor to place the exempt property beyond the reach of debtors. Section 6 of the Bankruptcy Act is drawn to incorporate Wisconsin law. If such an exchange with such intent is not fraudulent within the meaning of § 815.18(30), then, so far as § 6 of the Bankruptcy Act goes, the homestead would remain exempt in the hands of Frances Schwingle. If the power to strip the exemption from the homestead is not granted by § 815.18(30), it is highly unlikely that it is granted by § 67(d) of the Bankruptcy Act. Had the bankruptcy judge elected under § 67(d) to preserve the challenged exchange, the secured promissory note would have remained beyond the reach of the trustee and the real property might well have remained shielded by the exemption.

The bankruptcy judge balanced the conflicting interests presented, and attempted to reach an equitable solution. That the trustee would balance these interests differently does not constitute grounds for this court to reverse the judgment of the bankruptcy judge.

I appreciate that the Strangs will not realize the full amount awarded them by the jury. It appears they could not have reached the entire amount for which Frances Schwingle was personally liable, however the bankruptcy judge treated the transaction between Frances Schwingle and her sons. The record does not disclose whether at the time of the exchange, the real property was worth more than the note. Even assuming, however, the Strangs would do better with the house, the discretionary function was for the bank-

ruptcy court to exercise. Because the court did not abuse its discretion in rescinding the transfer rather than preserving it, I affirm the decision of the bankruptcy court.

### Order

It is ordered that the judgment of the bankruptcy court is affirmed.