345 F.3d 1036
 In re: Steven H. STERN, Debtor, No. 00-56431
David A. Gill, Chapter 7 Trustee, Appellant,
v.
Steven H. Stern, Appellee.
In re: Steven H. Stern, Debtor,
Steven H. Stern, Appellant,
v.
David A. Gill, Chapter 7 Trustee, Appellee, and
Dove Audio, Inc., Plaintiff.
 No. 00-56431.
 No. 00-56526.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 5, 2002 — Pasadena, California.
 Filed February 4, 2003.
 Amended Opinion Filed October 7, 2003.
 
 Richard D. Burstein, Danning, Gill, Diamond & Kollitz, Los Angeles, California, for the appellant.
 David R. Weinstein (argued), Sharon Z. Weiss (briefed), Weinstein, Eisen & Weiss, Los Angeles, California, for the appellees.
 Appeal from the United States District Court for the Central District of California; Gary A. Feess, District Judge, Presiding. D.C. No. CV-98-07415-GAF.
 Before: Arthur L. Alarcón, Barry G. Silverman and Johnnie B. Rawlinson, Circuit Judges.
 
 
 1
 Opinion by Judge Rawlinson; Partial Concurrence and Partial Dissent by Judge Alarcón.
 
 ORDER AND AMENDED OPINION
 ORDER
 
 2
 The opinion filed on February 4, 2003, is hereby amended. With this amendment, a majority of the panel has voted to deny the petition for rehearing and the alternative petition for rehearing en banc.
 
 
 3
 Judges Silverman and Rawlinson voted to deny the petition for rehearing and the alternative petition for rehearing en banc. Judge Alarcón voted to grant the petition for rehearing and recommended granting the alternative petition for rehearing en banc.
 
 
 4
 The full court has been advised of the alternative petition for rehearing en banc, and no active judge of the court has requested a vote on rehearing the matter en banc. Fed. R.App. P. 35.
 
 
 5
 The petition for rehearing and alternative petition for rehearing en banc filed on February 12, 2003 are DENIED.
 
 
 6
 No additional petitions for rehearing will be accepted in this case.
 
 OPINION
 
 7
 RAWLINSON, Circuit Judge.
 
 
 8
 David A. Gill, Bankruptcy Trustee, ("Trustee") appeals the district court's decision affirming the bankruptcy court's order, which granted summary judgment in favor of the debtor Steven Stern ("Stern"). Stern cross-appeals the district court's determination that Stern's pension plan funds are not excluded from the bankruptcy estate.
 
 
 9
 Stern filed for bankruptcy after the entry of a sizeable judgment against him in an arbitration proceeding. We must determine whether the transfer of proceeds from an Individual Retirement Account ("IRA") into a Profit Sharing Pension Plan was a fraudulent transfer, subject to avoidance by the Trustee.[1]
 
 
 10
 Constrained by our precedent, we AFFIRM the district court's holding that, although the pension plan was properly included within the bankruptcy estate, the pension plan assets were exempt from distribution to Stern's creditors.
 
 I.
 
 Background
 
 
 11
 Stern's retirement planning commenced with the creation of a tax-qualified profit-sharing plan in 1974 ("1974 Plan").[2] In 1978, Stern terminated the 1974 Plan and created a qualified, defined benefit pension plan ("1978 Plan"). In 1989, Stern terminated the 1978 Plan and transferred the plan assets into an IRA account ("IRA").
 
 
 12
 Stern became embroiled in a business dispute with Dove Audio, Inc. in 1991. The dispute culminated in an arbitration award of over $4.5 million dollars against Stern. At about the same time, Stern hired Margaret Mayersohn ("Mayersohn"), with whom he became romantically involved, and later married.
 
 
 13
 In April 1992, Stern created a Profit Sharing Plan ("1992 Pension Plan") with Mayersohn and Stern as beneficiaries. On October 22, 1992, the Los Angeles Superior Court issued a writ of attachment to secure the arbitration award. The next day, Stern executed the Plan Documents for the 1992 Pension Plan and, a few days later, transferred the proceeds of his IRA into the 1992 Pension Plan. Dove filed a fraudulent transfer action in state court, contending that Stern's transfer of funds from his IRA into the 1992 Pension Plan was fraudulently designed to shield his assets from creditors. Stern, in turn, initiated a voluntary Chapter 7 bankruptcy proceeding. The creditors removed the fraudulent transfer action to the bankruptcy court as an adversary proceeding.
 
 
 14
 Stern filed a Motion for Summary Judgment in the core bankruptcy proceeding, seeking to exclude the assets of the 1992 Pension Plan from the bankruptcy estate. Stern also sought summary judgment on the fraudulent transfer claim in the adversary proceeding.
 
 
 15
 The bankruptcy court ruled that the 1992 Pension Plan was excluded from the bankruptcy estate because it was a qualified plan under the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"). The bankruptcy court also concluded that, although the 1992 Pension Plan assets were not excluded from the estate under California law, the 1992 Pension Plan's assets were exempted from creditors' claims under California law. Finally, the bankruptcy court held that Stern's transfer of assets from the IRA to the exempt 1992 Pension Plan was not fraudulent. The creditors appealed the bankruptcy court's rulings to the district court.
 
 
 16
 The district court rendered the following rulings on appeal:
 
 
 17
 1. The 1992 Pension Plan was not ERISA qualified;
 
 
 18
 2. The 1992 Pension Plan was not excludable under state law;
 
 
 19
 3. The 1992 Pension Plan was exempt under California law; and
 
 
 20
 4. The transfer of assets from Stern's IRA to the 1992 Pension Plan was not fraudulent.
 
 
 21
 Stern appeals the district court's ruling that the 1992 Pension Plan was not ERISA-qualified. The Trustee appeals the district court's rulings that the 1992 Pension Plan was exempt under California law, and that the transfer of assets from the IRA to the 1992 Pension Plan was not fraudulent.
 
 II.
 
 Standard of Review
 
 
 22
 We review the bankruptcy court's grant of summary judgment de novo. Clicks Billiards, Inc. v. Sixshooters, Inc., 251 F.3d 1252, 1257 (9th Cir.2001). We must determine whether, viewing the evidence in the light most favorable to the nonmoving party, genuine issues of fact remain for trial. Oliver v. Keller, 289 F.3d 623, 626 (9th Cir.2002). We also must determine whether the bankruptcy court correctly applied the relevant substantive law. Id.
 
 
 23
 "We review the district court's decision on appeal from the bankruptcy court de novo, without giving deference to the district court's conclusions." Harmon v. Kobrin (In re Harmon), 250 F.3d 1240, 1245 (9th Cir.2001) (citation omitted). Because the facts in this case are virtually undisputed, we focus on the court's application of the law to the facts.[3]
 
 III.
 
 Discussion
 
 
 24
 A. ERISA — Qualified Status of the 1992 Pension Plan
 
 
 25
 If the 1992 Pension Plan was ERISA-qualified, the assets in the plan were excluded from the bankruptcy estate. See Patterson v. Shumate, 504 U.S. 753, 757-58, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992); Barkley v. Conner (In re Conner), 73 F.3d 258, 259-60 (9th Cir.1996). The status of the pension plan is determined as of the date of the bankruptcy filing. Lowenschuss v. Selnick (In re Lowenschuss), 171 F.3d 673, 680 (9th Cir.1999).
 
 
 26
 It is undisputed that, as of the date of his bankruptcy filing, Stern was married to Mayersohn, the only other beneficiary of the 1992 Pension Plan. Prior to the marriage, Mayersohn was the sole employee of the 1992 Pension Plan.[4] Absent at least one employee beneficiary, a pension plan is not ERISA-qualified. See Peterson v. Am. Life & Health Ins. Co., 48 F.3d 404, 407-08 (9th Cir.1995).
 
 
 27
 Although Stern acknowledged the applicability generally of In re Lowenschuss, he challenges its applicability specifically to the facts of this case. Relying upon Peterson, Stern contended that his marriage to Mayersohn did not alter the ERISA-qualified status of the 1992 Pension Plan.
 
 
 28
 We agree with the district court that the fact that Peterson concerned an employee welfare benefit plan and In re Lowenschuss addressed a pension plan is outcome determinative.
 
 
 29
 29 U.S.C. § 1002(1) defines an ERISA-qualified welfare benefit plan as one "established or maintained ... for the purpose of providing [benefits] for its participants or their beneficiaries[.]" 29 U.S.C. § 1002(1) (West 1999). In contrast, a pension plan is ERISA-qualified only "to the extent that by its express terms or as a result of surrounding circumstances [the pension plan] provides retirement income to employees ..." 29 U.S.C. § 1002(2)(A)(i) (West 1999).
 
 
 30
 Taking into account the welfare benefit plan definition's focus on the past and the pension plan definition's emphasis on the present, Peterson and In re Lowenschuss are easily reconciled. Under the rationale of Peterson, ERISA qualification for a welfare benefit plan is determined after considering the purpose of the plan when it was established or as it is maintained. 48 F.3d at 407-08. In In re Lowenschuss, however, we are instructed to assess ERISA qualification for a pension plan by gauging whether there is at least one extant employee beneficiary. 171 F.3d at 680. Under In re Lowenschuss, the assessment is made as of the bankruptcy filing date. Id.
 
 
 31
 There is no dispute that as of the bankruptcy filing date, the 1992 Pension Plan covered an owner and the spouse of an owner, neither of which met the definition of employee. See Peterson, 48 F.3d at 408; see also 29 C.F.R. § 2510.3 3(c)(1). The district court properly applied In re Lowenschuss and determined that the 1992 Pension Plan was not ERISA-qualified at the time of the bankruptcy filing. As a result, the assets of the 1992 Pension Plan were not exempt from the bankruptcy estate by virtue of ERISA qualification.
 
 
 32
 B. Exemption of the 1992 Pension Plan Under California Law[5]
 
 
 33
 Cal.Civ.Proc.Code § 704.115(b) provides: "All amounts held, controlled, or in process of distribution by a private retirement plan, for the payment of benefits as an annuity, pension, retirement allowance, disability payment, or death benefit from a private retirement plan are exempt."
 
 
 34
 The Trustee does not take issue per se with the applicability of Cal.Civ.Proc.Code § 704.115(b). Rather, the Trustee challenges the exemption on the basis that Stern's transfer of assets from the IRA into the 1992 Pension Plan was fraudulent. That brings us to the final issue before us.
 
 
 35
 C. Transfer of Assets Into the 1992 Pension Plan
 
 
 36
 The Trustee vigorously advocates that Stern's transfer of assets from his IRA into the 1992 Pension Plan was fraudulent, and therefore, the assets are not exempt from the reach of creditors.
 
 
 37
 The Trustee's Fourth Amended Complaint asserted claims for fraudulent transfer pursuant to Cal. Civ.Code §§ 3439.04(a); 3439.04(b)1-2 and 3439.05.[6]
 
 
 38
 Cal. Civ.Code § 3439.04(a) and (b) provide:
 
 
 39
 § 3439.04. Transfers fraudulent as to present and future creditors.
 
 
 40
 A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:
 
 
 41
 (a) With actual intent to hinder, delay, or defraud any creditor of the debtor.
 
 
 42
 (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
 
 
 43
 (1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
 
 
 44
 (2) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.
 
 
 45
 Cal. Civ.Code § 3439.04.
 
 
 46
 § 3439.05. Transfers fraudulent as to present creditors.
 
 
 47
 A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.
 
 
 48
 Cal. Civ.Code § 3439.05.
 
 
 49
 On appeal, only the Fourth, Fifth and Sixth Claims for Relief, related solely to the IRA transfer, are at issue. In the Fourth Claim for Relief, the Trustee alleged that Stern and his Pension Plan effectuated the IRA transfer "with the specific intent to hinder, delay and to defraud creditors of the Debtor."
 
 
 50
 In the Fifth Claim for Relief, the Trustee alleged that Stern "did not receive reasonably equivalent value in exchange for the IRA transfer."
 
 
 51
 In the Sixth Claim for Relief, the Trustee alleged that Stern "was insolvent at the time of the IRA Transfer, or ... became insolvent as a result of the IRA transfer."[7]
 
 
 52
 We review the district court's determination through the applicable evidentiary lens. See Anderson v. Liberty Lobby, 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden.").
 
 
 53
 The appropriate evidentiary standard in this case is a matter of some dispute. We have previously ruled in a bankruptcy action involving state law exemptions that proof of fraud "must ordinarily be made by evidence which is clear and convincing." Love v. Menick (In re Love), 341 F.2d 680, 682 (9th Cir.1965) (citation and internal quotation marks omitted).[8] However, the United States Supreme Court more recently ruled, in Grogan v. Garner, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), that proof of fraud for the purpose of the nondischargeability provision of the Bankruptcy Code is governed by "the ordinary preponderance-of-the-evidence standard." Id. at 291.
 
 
 54
 Admittedly, Grogan addressed exceptions to the discharge of debts, as provided in 11 U.S.C. § 523, and this case concerns eligibility for state law exemptions under 11 U.S.C. § 522. Nevertheless, we are persuaded that the ruling in Grogan implicitly overruled our holding in In re Love.
 
 
 55
 We recently clarified that "circuit precedent, authoritative at the time that it issued, can be effectively overruled by subsequent Supreme Court decisions that `are closely on point,' even though those decisions do not expressly overrule the prior circuit precedent." Miller v. Gammie, 335 F.3d 889, 899 (9th Cir.2003) (en banc) (citation omitted). We are now instructed that we are "bound not only by the holdings of [Supreme Court] decisions but also by their `mode of analysis.' Id. at 900 (citation omitted)."[T]he issues decided by the higher court need not be identical in order to be controlling. Rather, the "... court ... must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." Id. at 900.
 
 
 56
 Grogan's "mode of analysis" definitively "undercuts the theory" of In re Love that proof of fraud sufficient to negate a state law exemption must be clear and convincing. In Grogan, the Supreme Court reasoned that "in the context of provisions designed to exempt certain terms from discharge, a debtor has [no] interest in discharge sufficient to require a heightened standard of proof." 498 U.S. at 286, 111 S.Ct. 654. Rather, "[r]equiring the creditor to establish by a preponderance of the evidence that [the assets are non-exempt] reflects a fair balance between the[] conflicting interests" of giving debtors a fresh start and protecting creditors who are victims of fraud on the part of the debtor. Id. at 287, 111 S.Ct. 654.
 
 
 57
 The reasoning of Grogan warrants a conclusion that our prior precedent, In re Love, has been implicitly overruled. No principled basis exists to distinguish between actual fraud and constructive fraud on the one hand, or between nondischargeability of debts and exemption of assets on the other.
 
 
 58
 Accordingly, we view the evidence in this case in light of the preponderance of the evidence standard of proof. Even so, summary judgment was appropriately entered on behalf of the debtor.
 
 
 59
 We are constrained by our prior opinion in Wudrick v. Clements, 451 F.2d 988 (9th Cir.1971). In that case, we ruled "that the purposeful conversion of nonexempt assets to exempt assets on the eve of bankruptcy is not fraudulent per se." Id. at 989 (citation omitted).
 
 
 60
 The facts of Wudrick are not unlike our case.
 
 
 61
 When bankruptcy appeared inevitable, Mr. and Mrs. Roon consulted experienced bankruptcy counsel. One of the things they did on his advice to enhance their exemptions was to refinance their 1966 Chevrolet. The bank loaned them $2,325 on the car. From this amount they paid off the previous car loan and their attorney's fees, and deposited $800 in the Union Federal Savings & Loan Association. They then filed petitions in bankruptcy. They claimed that the $800 account was exempt from execution under California [law] and was therefore exempt under section 6 of the Bankruptcy Act, 11 U.S.C. § 24, though the automobile would not have been.
 
 
 62
 
 Id.
 
 
 
 63
 In reversing the district court's determination that Wudrick engaged in a fraudulent transfer, we clarified that "[t]he finding of fraud was based solely on the fact that nonexempt assets were deliberately converted to exempt assets just prior to filing the bankruptcy petition." Id. at 990. We explained that this "evidence was insufficient as a matter of law to establish fraud." Id. Our analysis was impliedly affected by the clarification that a different conclusion might be reached "if on the eve of bankruptcy a debt were created with no intention of repaying the creditor...." Id.
 
 
 64
 Here, the principal evidentiary inference relied upon by the Trustee is that non-exempt assets were converted to exempt assets immediately prior to bankruptcy. But, as Wudrick demonstrates, this inference is insufficient as a matter of law to establish a fraudulent transfer. See Jackson v. Grover (In re Jackson), 472 F.2d 589, 590 (9th Cir.1973).
 
 
 65
 The dissent cites In re Love in an effort to distinguish Wudrick. However, In re Love actually supports a finding of exemption. In that case we recognized that "the exemption statutes of California are applied with liberality." 341 F.2d at 682 (citations omitted). We also clarified that the exemption determination is to be determined "upon the basis of conditions existing at the time of the filing of the bankruptcy petition." Id. (citations omitted). When Stern's bankruptcy petition was filed, the assets in question "rested in [the 1992 Pension Plan] which ... enjoyed an exempt status." See id.
 
 
 66
 The dissent also cites Acequia Inc. v. Clinton, (In re Acequia, Inc.), 34 F.3d 800 (9th Cir.1994) in support of its position. However, that case is inapposite because the property transferred did not enjoy an exempt status when the bankruptcy petition was filed. The rationale of Wudrick is inapplicable to a situation such as that presented in Acequia, but completely pertinent to the case at hand, where assets are converted to an exempt status pre-bankruptcy.
 
 
 67
 At bottom, the "badges of fraud" articulated in the dissent merely rephrase the argument that Stern transferred funds from his IRA account into the 1992 Pension Plan Account on the eve of bankruptcy. In such a circumstance, we are persuaded that Wudrick controls.
 
 
 68
 Aside from the conversion of non-exempt assets into exempt assets, which is nonfraudulent "as a matter of law," see Wudrick, 451 F.2d at 990, the Trustee and the dissent cite as "badges of fraud" the facts that Stern:
 
 
 69
 1) was sued and lost the arbitration before transferring the funds to the Plan;
 
 
 70
 2) testified inconsistently as to his motive for transferring the funds to the Plan;
 
 
 71
 3) may have, as a result of the 4.5 million dollar arbitration award levied against him, been insolvent when he made the transfer; 4) transferred the funds to the Plan to benefit him and his wife;
 
 
 72
 5) transferred all or substantially all of his property into the Plan; and
 
 
 73
 6) retained control of the funds following the transfer.
 
 
 74
 (Dissenting Opinion at pages 1048) (emphasis added).
 
 
 75
 With the exception of the arbitration loss and the speculative insolvency, the other articulated badges of fraud are simply restatements of the accusation that Stern converted nonexempt assets into exempt assets, an accusation that cannot support a finding of fraud. See Wudrick, 451 F.2d at 990. A similar fate awaits the claim that Stern "may have been insolvent." We have consistently discounted speculative assertions when raised in defense of a summary judgment motion. See, e.g., Paladin Assoc., Inc. v. Montana Power Co., 328 F.3d 1145, 1161 (9th Cir.2003). We are left with the fact that Stern lost a multimillion dollar arbitration. That single unspectacular fact does not meet a preponderance of the evidence burden of proof.
 
 
 76
 Accordingly, we AFFIRM the district court's rulings that the 1992 Pension Plan was not ERISA-qualified; that the 1992 Pension Plan was exempt under California law; and that the transfer of assets from Stern's IRA to the 1992 Pension Plan was not fraudulent.
 
 
 77
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 The remaining creditors did not actively participate in the appeal
 
 
 [2]
 The retirement plans were established under the auspices of Steven H. Stern, Inc., and benefitted Stern and his then-wife Sharma, who were both employees of Stern, Inc
 
 
 [3]
 The Trustee objected to consideration of certain affidavits submitted by Stern in support of his summary motion. However, the affidavits were in compliance with the requirements of Rule 56(e) of the Federal Rules of Civil ProcedureBlock v. City of Los Angeles, 253 F.3d 410, 419 (9th Cir.2001) (stating that affidavits must be based upon personal knowledge and contain admissible evidence). Contrary to the Trustee's assertion, the affidavits were not so inconsistent with deposition testimony that the bankruptcy court abused its discretion in considering the affidavits.
 
 
 [4]
 Stern, as sole owner of the 1992 Pension Plan's sponsor, did not fit within the definition of employeeSee Peterson v. Am. Life & Health Ins., 48 F.3d 404, 408 (9th Cir.1995).
 
 
 [5]
 11 U.S.C. § 522(b) permits the debtor to claim exemptions under state law
 
 
 [6]
 These code provisions encompass actual and constructive fraudSee Plotkin v. Pomona Valley Imports, Inc. (In re Cohen), 199 B.R. 709, 716, nn. 7, 8 (B.A.P. 9th Cir.1996).
 
 
 [7]
 The Fourth Claim for Relief states a claim for actual fraud. The Fifth and Sixth Claims for Relief assert constructive fraud claimsSee Mejia v. Reed, 31 Cal.4th 657, 3 Cal.Rptr.3d 390, 74 P.3d 166 (2003).
 
 
 [8]
 We are aware that various bankruptcy courts have adopted a preponderance of the evidence standard burden of proof for proceedings under 11 U.S.C. § 548See e.g., Model Imperial v. Hamilton Bank, 250 B.R. 776 (S.D.Fla.2000). However, those cases are not binding precedent, as is In re Love.
 
 
 
 78
 ALARCÓN, Senior Circuit Judge, Concurring in Part, Dissenting in Part.
 
 
 79
 I concur in the majority's holding that the funds in the Plan were not excludable from Stern's bankruptcy estate. I dissent from the majority's conclusion that the funds in the Plan were exempt from distribution to Stern's creditors under California law. I would hold that the Trustee presented sufficient facts to support an inference that Stern transferred funds into the Plan with the intent to hinder, delay, or defraud his creditors. A fraudulent transfer is not exempt from distribution to creditors under California law. Cal. Civ. Code §§ 3439.04 & 3439.05 (West 2002); Maddox v. Robertson (In re Prejean), 994 F.2d 706, 708 (9th Cir.1993). Accordingly, whether the Debtor acted with fraudulent intent is a question that should be determined after a trial on the merits and a determination of the credibility of the witnesses regarding Stern's intent.
 
 
 80
 The Trustee presented evidence that on September 15, 1992, Dove Audio, Inc. ("Dove") received an arbitration award of 4,585,000 dollars against Stern. Stern learned of the award on or about September 30, 1992. On October 22, 1992, the Los Angeles Superior Court issued a writ of mandate to secure the payment to Dove of the amount awarded by the arbitrator.
 
 
 81
 On October 14, 1992, Stern filed for a divorce. The next day, Stern received a Default Judgment of Dissolution of his marriage that included a stipulated property settlement agreement. Between October 19, 1992 and October 21, 1992, pursuant to the property settlement agreement, Stern transferred all his community property, consisting of over 2 million dollars in non-exempt assets, to Sharma Stern. Stern made these transfers without the benefit of property appraisals. Stern retained only supposedly exempt assets and assumed the 4.5 million dollar arbitration award, a community debt, owed to Dove. On October 23, 1992, Stern executed the documents that created the Plan. Later in the same month, Stern rolled 1.4 million dollars from his IRA into the Plan. On November 2, 1992, Stern filed for bankruptcy. Stern dismissed the Chapter 11 action on December 22, 1992, after the bankruptcy judge indicated that she would appoint a trustee for Stern's estate.
 
 
 82
 In July 1993, Dove filed an action in the Los Angeles Superior Court in which it alleged that Stern had fraudulently transferred the 1.4 million dollars into the Plan to shield his estate from his creditors. On August 11, 1995 while the fraudulent conveyance action was pending in state court, Stern filed a Chapter 7 bankruptcy petition (the "core proceeding"). In the fall of 1995, Dove transferred the fraudulent conveyance action (the "adversary proceeding") to the bankruptcy court. On June 26, 1996, the Trustee was authorized to intervene in the adversary proceeding.
 
 
 83
 On or about March 27, 1998, Stern filed a motion for summary judgment in the core proceeding. He sought to prevent the money in the Plan from being included in the bankruptcy estate. He argued that: (1) the Plan is excludable from the bankruptcy estate as ERISA-qualified; (2) the Plan is exempt from creditor distribution under California law; and (3) even if there had been a fraudulent transfer, the Plan would still be exempt. The Trustee responded on April 27, 1998. The bankruptcy court agreed with Stern's arguments. It held that the Plan was excluded from the estate as ERISA-qualified and that it was also exempt under California law.
 
 
 84
 On or about May 11, 1998, Stern moved for summary judgment on the fraudulent transfer claims in the adversary proceeding. Stern asserted that there was no transfer. He asserted in the alternative that even if there had been a transfer, the Trustee could not show that it was fraudulent. In response, the Trustee disputed Stern's legal arguments and asserted that there was a question of fact regarding Stern's credibility and his intent regarding the transfer. The bankruptcy court concluded that there was nothing improper about transferring assets into an exempt retirement fund on the eve of bankruptcy.
 
 
 85
 The Trustee timely appealed the bankruptcy court's rulings on summary judgment to the district court. On August 9, 2000, the district court concluded that the funds in the Plan were not excludable as ERISA-qualified. It also concluded that the funds were exempt from distribution to creditors under California law because the Trustee failed to present evidence of fraud beyond the mere transfer of funds on the eve of bankruptcy.
 
 
 86
 Under California law, funds held in a "private retirement plan" are exempt from distribution to creditors. Cheng v. Gill (In re Cheng), 943 F.2d 1114, 1116 (9th Cir.1991); Cal.Civ.Proc.Code § 704.115(b)-(e) (West 2002). Corporate plans are entitled to complete exemption even where the corporation sponsoring the plan is closely held and its sole shareholder, director, and chief executive officer is the debtor. In re Cheng, 943 F.2d at 1115-17. The Plan in the instant case is a corporate plan, sponsored by Stern, Inc., and is therefore exempt. Stern argues that even if we assume that he transferred the funds into the Plan to defraud his creditors, the funds nevertheless remain exempt as part of the corporate plan. I disagree. I would hold that it was error for the district court to uphold summary judgment in favor of Stern where the Trustee presented evidence of fraud, beyond the mere transfer of property on the eve of bankruptcy.
 
 
 87
 A transfer may be avoided under California law if it was made with the "actual intent to hinder, delay, or defraud any creditor of the debtor," or if it was made "[w]ithout receiving a reasonably equivalent value in exchange for the transfer...." Cal. Civ.Code §§ 3439.04 & 3439.05 (West 2002); Maddox v. Robertson (In re Prejean), 994 F.2d 706, 708-09 (9th Cir.1993). A transfer may also be avoided where there is actual fraud. Love v. Menick, 341 F.2d 680, 682-83 (9th Cir.1965); In re Moffat, 107 B.R. 255, 266 (Bankr.C.D.Cal.1989). Fraudulent intent may be shown through circumstantial evidence of actual intent to defraud, or "badges of fraud." Badges of fraud include:
 
 
 88
 (1) actual or threatened litigation against the debtor;
 
 
 89
 (2) a purported transfer of all or substantially all of the debtor's property;
 
 
 90
 (3) insolvency or other unmanageable indebtedness on the part of the debtor;
 
 
 91
 (4) a special relationship between the debtor and the transferee; and, after the transfer, (5) retention by the debtor of the property involved in the putative transfer.
 
 
 92
 The presence of a single badge of fraud may spur mere suspicion; the confluence of several can constitute conclusive evidence of actual intent to defraud, absent "significantly clear" evidence of a legitimate supervening purpose.
 
 
 93
 Acequia Inc. v. Clinton (In re Acequia Inc.), 34 F.3d 800, 806 (9th Cir.1994) (emphasis and citations omitted); see also Cal. Civ.Code § 3439.04 (referring in comment (5) to the consideration courts give to the "badges of fraud").
 
 
 94
 Citing to on this court's opinion in Wudrick v. Clements, 451 F.2d 988 (9th Cir.1971), the majority writes; "Here, the principal evidentiary inference relied upon by Trustee is that non-exempt assets were converted to exempt assets immediately prior to bankruptcy. But, as Wudrick demonstrates, this inference is insufficient as a matter of law to establish a fraudulent transfer." Majority opinion at p. 1044.
 
 
 95
 I respectfully disagree with my esteemed colleagues that Wudrick is determinative. It can readily be distinguished from the instant case. In Wudrick, Mr. and Mrs. Roon, after consulting experienced bankruptcy lawyers, refinanced their 1966 Chevrolet automobile. Id. at 989. The bank loaned them 2,325 dollars on the car. The Roons used these funds to pay off their previous car loan and their attorney's fees. Id. They also deposited 800 dollars in a savings and loan association. Id. They then filed bankruptcy petitions. They claimed that the 800 dollar account was exempt from distribution under California law and the Bankruptcy Act. Id.
 
 
 96
 In a companion case, the record showed that Wudrick, on the advice of bankruptcy counsel, obtained a 2,197 dollar loan from a finance company on two vehicles about three weeks before filing his bankruptcy petition. Id. He put 1,300 dollars in a credit union. Such funds are exempt from distribution under California law. Id.
 
 
 97
 The Trustee argued in Wudrick that "conversion of non-exempt assets to exempt assets on the eve of bankruptcy by creation of a secured debt and deposit of the proceeds in an exempt account is fraudulent as a matter of law and therefore a claim of exemption based on such a transfer is invalid." Id. at 990. In rejecting this argument, we held that "[i]t has long been the rule in this and other jurisdictions that the purposeful conversion of nonexempt assets to exempt assets on the eve of bankruptcy is not fraudulent per se." Id. at 989 (citing In re Dudley, 72 F.Supp. 943, 945-947 (D.Cal.1947), aff'd per curiam, Goggin v. Dudley, 166 F.2d 1023 (9th Cir.1948); Love v. Menick, 341 F.2d 680, 682-683 (9th Cir.1965)).
 
 
 98
 The actual holding in Wudrick reads as follows:
 
 
 99
 Since no more is shown in either case than the intentional conversion of nonexempt property to exempt property, Love v. Menick, supra, controls.
 
 
 100
 A different case would be presented if on the eve of bankruptcy a debt were created with no intention of repaying the creditor, either by purchasing goods on credit or borrowing money without security. See Love v. Menick, supra, at 682-683 F.2d.
 
 
 101
 Wudrick, 451 F.2d at 990.
 
 
 102
 There is no showing in this matter that Stern consulted an experienced bankruptcy attorney before he transferred the funds from his IRA into the exempt Plan. He therefore cannot prevail on the argument that he acted in good faith reliance on the advice of his attorney when he transferred the funds and therefore lacked the intent required to deny him a discharge of his debts. See In re Adeeb, 787 F.2d 1339, 1343 (9th Cir.1986) (discussing the effect of a debtor's good faith reliance on an attorney's advice). Furthermore, the Trustee presented evidence that he did more than purposefully convert his assets on the eve of bankruptcy.
 
 
 103
 The Trustee presented evidence that Stern: (1) was sued and lost the arbitration before transferring the funds to the Plan; (2) testified inconsistently as to his motive for transferring the funds to the Plan; (3) may have, as a result of the 4.5 million dollar arbitration award levied against him, been insolvent when he made the transfer; (4) transferred the funds to the Plan to benefit him and his wife; (5) transferred all or substantially all of his property into the plan; and (6) retained control of the funds following the transfer. This evidence demonstrates the presence of several badges of fraud, including actual litigation against Stern, transfer of substantially all of Stern's property, insolvency, and retention of control over the funds after the transfer. This evidence supports an inference of fraudulent intent.
 
 
 104
 In Wudrick, we cited Love v. Menick for the rule regarding the purposeful conversion of nonexempt assets to exempt assets. Wudrick, 451 F.2d at 989-90. In Love, we noted that in In re Martin, 217 F.Supp. 937 (D.Or. 1983), the district court cited the prevailing rule "that the purchase of exempt property by an insolvent debtor on the eve of bankruptcy will not, in itself, permit the trustee to disallow the claimed exemption." Love, 341 F.2d at 683 (internal quotations omitted). The district court held in In re Martin, however, that substantial evidence in the record supported the referee's finding of fraudulent intent and action. Love, 341 F.2d at 683. In reconciling the Martin decision with the "prevailing rule," we commented in Love:
 
 
 105
 To harmonize the court's decision with its recognition of the force of ... the "prevailing rule," we must assume that the record in Martin contained some quality of "substantive evidence" of fraudulent intent which we cannot find in the record of the case at hand.
 
 
 106
 Love, 341 F.2d at 683; see also In re Dudley, 72 F.Supp. 943, 945-47 (S.D.Cal. 1947) (discussing the "prevailing rule").
 
 
 107
 Thus, the law of this circuit as reflected in Wudrick, and Love is as follows: "the purposeful conversion of nonexempt assets to exempt assets on the eve of bankruptcy is not fraudulent per se." Wudrick, 451 F.2d at 989. The term "per se" is defined as: "[o]f, in, or by itself; standing alone, without reference to additional facts." Black's Law Dictionary 1162 (7th ed.1999). Therefore, where substantial evidence in the record supports a finding of the debtor's fraudulent intent, property transferred on the eve of bankruptcy is not exempt from distribution to creditors. See Tavenner v. Smoot, 257 F.3d 401, 406-09 (4th Cir.2001) (holding that "transfers of exemptible property are amenable to avoidance and recovery actions by bankruptcy trustees," and that "such transfers surely can be characterized as fraudulent, so long as the debtor had the requisite fraudulent intent"); Ford v. Poston, 53 B.R. 444, 448, 449-50 (D.Va.1984) (stating the general rule that "in the eleventh hour a debtor may convert a part of his property which is not exempt into exempt items for the purpose of placing the property out of reach of his creditors when he claims the exemption," and stating that "[t]he courts have long recognized a limitation of this rule: If the evidence reveals fraud apart and distinct from the mere transfer of non-exempt property into exempt, the debtor has transferred the property with the intent to defraud, hinder, or delay his creditors."); In re Krantz, 97 B.R. 514, 522 (Bankr.N.D.Iowa 1989) (discussing the rule that "the act of converting non-exempt property to exempt property is not enough to deny the exemption," but "[t]he actual intent to hinder, delay or defraud one's creditors is sufficient to deny an exemption," and that "[b]ecause intent to hinder, delay or defraud is so difficult to prove directly, the Iowa Supreme Court relies on `badges or indices of fraud' to determine the debtor's intent."). This court's use of the term "per se," in setting forth the rule in Wudrick that "the purposeful conversion of non-exempt assets to exempt assets on the eve of bankruptcy is not fraudulent per se," is significant. We did not hold in Wudrick that a transfer on the eve of bankruptcy is inexorably exempt from distribution to creditors. The Majority has simply ignored the significance of the term "per se" in this court's holding in Wudrick.[1]
 
 
 108
 Because the Trustee presented genuine issues of material fact regarding whether Stern acted with fraudulent intent when he transferred funds from his IRA into exempt funds under the Plan, I would reverse the judgment of the district court and remand for a trial on the merits and express findings on the question whether Stern intended to hinder, delay, or defraud his creditors.
 
 
 
 Notes:
 
 
 [1]
 During oral argument, Stern's attorney quoted the holding inWudrick, and attempted to convince this Court that the words "per se" were superfluous. He argued as follows:
 "[T]he purposeful conversion of nonexempt assets to exempt assets on the eve of bankruptcy is not fraudulent per se." And what he [Stern] seems to be saying if I understand him is those two words, "per se," at the end may open up some door, though I've already answered if you assume that opens up a door what could there be behind that door? And the answer is, nothing that changes it. But what's interesting in terms of case analysis, if you take those two words off of there, I can't imagine he could even make the argument, and if Wudrick read, "It has long been the rule that the purposeful conversion of nonexempt assets to exempt assets on the eve of bankruptcy is not fraudulent," period ... I can't even imagine that this would be considered anything but a pure reversal of Wudrick, and to suggest that those two words there in that context really mean anything but that, alternatively, is not per se fraudulent. Well, would that open a door? The test has to be what could be behind that door....