**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. CC-19-1175-TaFS |
| CARLO BONDANELLI, | Bk. No. 2:14-bk-27656-WB |
| Debtor. | |
| FRANCESCO TIENI; OCEAN PARK SRL, | |
| Appellants, | |
| v. | MEMORANDUM* |
| PETER J. MASTAN, CHAPTER 7 TRUSTEE; CARLO BONDANELLI; DESERT SOLIS; ST. JOSEPH'S INVESTMENTS, INC. DEFINED BENEFIT PENSION PLAN; ST. JOSEPH'S INVESTMENTS, INC.;  CIVITAS INCORPORATED, | |
| Appellees. | |

Argued and Submitted on February 27, 2020
at Pasadena, California

---

  * This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Filed – March 18, 2020

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Julia Wagner Brand, Bankruptcy Judge, Presiding

Appearances:   Lori Speak of Lex Opus argued on behalf of appellants;
Jack Andrew Reitman of Landau Law LLP argued on
behalf of appellee Peter J. Mastan, Chapter 7 Trustee.

Before: TAYLOR, FARIS, and SPRAKER, Bankruptcy Judges.

## INTRODUCTION

Appellants Francesco Tieni and Ocean Park SRL, who collectively hold most of the claims against debtor Carlo Bondanelli, appeal the bankruptcy court's order approving the chapter 7[1] trustee's settlement of § 548(a)(1)(A) claims against Mr. Bondanelli, St. Joseph's Investments, Inc. Defined Benefit Pension Plan (the "Pension Plan"), Civitas Incorporated ("Civitas"), St. Joseph's Investments, Inc., and Desert Solis, Inc. (collectively, the "Defendants"). We discern no abuse of discretion by the bankruptcy court; it correctly identified the relevant legal standard and applied it in a logical and plausible manner given the record before it. We

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

2

AFFIRM.

## FACTS[2]

In 2004, Mr. Bondanelli, Appellants, and others formed a joint venture to develop real property in Santa Monica, California (the "Property"). A newly-formed entity, New West TC, LLC ("New West"), would acquire title and Mr. Bondanelli would complete development using joint venturer contributions and loan proceeds. But after acquisition of the land, disputes arose regarding the amount of additional development funding from Appellants.

Mr. Bondanelli, who was responsible for the development and had guaranteed repayment of the acquisition loan, eventually adopted a problematic method for obtaining cash from Appellants. He sued Appellants to compel additional capital contributions. This part of the plan is not troubling. And the fact that Mr. Bondanelli then entered into a settlement with Appellants where he agreed to pay them $800,000 in exchange for a transfer of all rights to New West and its assets, including the Property, seems reasonable in isolation. The problem, however, is that unbeknownst to Appellants, Mr. Bondanelli caused New West to sell the Property and to distribute the proceeds among all Defendants before

---

[2] We exercise our discretion to take judicial notice of documents filed in the bankruptcy court's dockets, as appropriate. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

entering into the settlement. Thereafter, he never paid the $800,000, and the value of New West, now a mere former owner of the Property, was negligible.

After Appellants learned of Mr. Bondanelli's deception, they sued him for fraudulent transfer, fraud, and breach of fiduciary duty. He responded by filing a chapter 7 case. Eventually, Peter J. Marstan, the chapter 7 trustee, filed § 548(a)(1)(A) complaints against Defendants, alleging that New West's transfers of the sale proceeds were made to defraud Mr. Bondanelli's creditors (*i.e.*, the Appellants); he sought the return of nearly $400,000 from the non-debtor defendants.

On the verge of trial, the parties reached a mediated settlement that, as relevant on appeal, required payment to the estate of $60,000 (the "Settlement").[3] Given the fraud allegations that underlaid the litigation, the Settlement required Defendants to provide declarations under penalty of perjury attesting that, other than the Pension Plan, none of them had assets of significant value and that the majority of their assets were undeveloped, raw land in the high desert of Southern California. Civitas agreed to pay the $60,000.

---

[3] The settlement also required Civitas to transfer to the estate its $129,382.50 claim against New West in the related bankruptcy *In re New West TC, LLC*, 2:17-bk-20201-WB. Appellants and the Trustee ignore this additional settlement consideration in their analysis of whether the settlement was fair and equitable. We cannot ascertain the value of this consideration from the record and do not address it further.

The Trustee moved for approval of the Settlement; Appellants opposed. At the hearing on the Trustee's motion, the bankruptcy court entertained argument, made oral findings as required by *Martin v. Kane (In re A & C Props.)*, 784 F.2d 1377 (9th Cir. 1986), and determined that the settlement was fair and equitable and should be approved. Appellants timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334(a) and 157(b)(2)(A) and (O). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court abuse its discretion when it approved the Settlement?

## STANDARD OF REVIEW

The bankruptcy court's decision to approve a compromise is reviewed for abuse of discretion. *Id.* at 1380. We apply a two-part test to determine if it abused its discretion, first, determining *de novo* if it identified the correct legal rule and, second, determining if its application of the legal standard was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1261-62 & n.21 (9th Cir. 2009) (en banc).

In conducting our appellate review, we ignore harmless error and may affirm on any ground supported by the record. *Lakhany v. Khan (In re*

5

*Lakhany)*, 538 B.R. 555, 559-60 (9th Cir. BAP 2015).

**DISCUSSION**

**Rule 9019(a) Standard**

Rule 9019 provides that, on the trustee's motion, the bankruptcy court may approve a compromise or settlement. Fed. R. Bankr. P. 9019(a). In this regard, it has considerable, but not unlimited, latitude; it must determine that the settlement is "fair and equitable." *Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988). The four relevant factors in assessing fairness and equity are:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Id.*

The court has discretion as to the weight to be given each factor; it need not weigh them equally. Thus, any one factor may have weight in isolation that justifies the settlement. *See In re WCI Cable, Inc.*, 282 B.R. 457, 472-73 (Bankr. D. Or. 2002).

The trustee has the burden to persuade the bankruptcy court that the compromise is fair and equitable. *In re Woodson*, 839 F.2d at 620. He is assisted in this burden by the general rule that bankruptcy courts should give some deference to his business judgment in deciding whether to settle

6

a matter for the benefit of the estate. *Goodwin v. Mickey Thompson Entm't Grp., Inc. (In re Mickey Thompson Entm't Grp., Inc.),* 292 B.R. 415, 420 (9th Cir. BAP 2003) (citing *In re A & C Props.,* 784 F.2d at 1381). He is also aided by policy considerations.

Compromise is favored where it allows the parties to avoid the expenses and burdens associated with litigation. *In re A & C Props.,* 784 F.2d at 1380-81. Thus, when assessing a compromise, courts appropriately canvass the issues and need not rule on disputed facts and questions of law. If the court were required to do more, there would be no point in compromising; the parties might as well try the case.

In short, we must affirm the bankruptcy court's settlement approval decision if it "amply considered the various factors that determine[ ] the reasonableness of the compromise. . . ." *Id.* at 1381. Here, it did.

**Difficulty of Collection**

The Trustee argued, and the bankruptcy court agreed, that collectability was the dispositive factor in determining that the Settlement was fair and equitable. The Trustee and his counsel, who identified themselves as having many years' experience in asset recovery and judgment enforcement work, perceived significant difficulties in collectability, warranting settlement. The court agreed and the record supports this conclusion.

The Pension Plan was the only Defendant with significant assets. But

7

the Trustee anticipated thorny collection issues related to this potential payment source; in particular, a fraudulent conveyance judgment might cause IRS disqualification of the Pension Plan and require payment of back taxes and penalties.

The other Defendants provided declarations evidencing their poor financial condition. Based on these declarations *and* his counsel's independent investigation, the Trustee concluded that these Defendants had no assets of significant value.

At the hearing, the bankruptcy court observed that:

> the driving factor here is collectability of a judgment. These companies are all out of business and . . . the transfers . . . occurred six years ago. The money has dissipated so . . . collecting on a judgment . . . is going to be incredibly difficult. And I think the Trustee is allowed to make that assessment and did appropriately make that assessment here.

Appellants claim that the bankruptcy court abused its discretion because it erroneously stated that all—rather than some—of the entities were out of business. By clinging to the court's perhaps imprecise, but certainly off-the-cuff, factual summary to assert error, they miss the point. Collection will be difficult because none of these entities have accessible, valuable assets. The record evidences that they *either* are defunct *or* own at most $3,000 in cash and raw, undeveloped land in the high desert.

Appellants also question whether Defendants dissipated their assets during Mr. Bondanelli's bankruptcy, thereby causing the collection issue.

8

But their bald rumination is irrelevant to the extent that Defendants have not been enjoined from transferring their assets.

Appellants also note that Civitas funded the $60,000 Settlement but claimed it has "less than $3,000 of cash on account." This side-eyed comment is likewise irrelevant; Civitas apparently had access to a loan or capital contribution. But access to outside capital to fund a settlement does not mean it could or would access these funds to pay a judgment.

**Probability of Success**

Appellants argue that the bankruptcy court erred by analyzing the merits of the Trustee's § 548(a)(1)(A) claims under an incorrect standard; we disagree. It is true that, at one point in its probability of success analysis, the bankruptcy court stated that there had to be "creditors in existence at the time of the fraudulent transfer." Appellants maintain that there is no such requirement under § 548(a)(1)(A). But we need not consider this argument because Appellants failed to raise it in their opening brief. *United States v. Ullah*, 976 F.2d 509, 514 (9th Cir. 1992).

And even if the bankruptcy court misinterpreted the law in some minor respect, such error would be harmless because the record otherwise thoroughly supported its conclusion that the likelihood of the Trustee prevailing was far from certain in light of multiple disputed factual and legal issues.

For example, in the Trustee's case against the Pension Plan to recover

$168,958.12 (*i.e.,* nearly half the total sum at issue in the avoidance actions), the litigants disagree which case law controls: (1) *Gill v. Stern (In re Stern),* 345 F.3d 1036 (9th Cir. 2003) (holding that a debtor's prepetition conversion of non-exempt assets to exempt assets may not be *per se* fraudulent); or (2) *Wolkowitz v. Beverly (In re Beverly),* 374 B.R. 221 (9th Cir. BAP 2007) (holding that *Stern* does not apply if the assets were moved from entirely non-exempt to exempt assets). Both cases are good law.

And while the Trustee and *Appellants* agree that the bankruptcy court should apply *Beverly*, the Trustee must still prove that the transfers were fraudulent under the facts. Contrary to Appellants' urging, there was evidence in the record that the transfer to the Pension Plan was made to repay loans rather than to defraud creditors; Mr. Bondanelli testified at the § 341(a) meeting of creditors that, in 2013, he repaid various loans that the Pension Plan had made to himself and other entities.[4] *See Mastan v. Bondanelli et al.,* Adv. No. 17-ap-01547-WB, Dkt. 25, pp. 2-3. In its analysis, the court specifically referenced a pretrial stipulation that recounted his testimony. Further, Appellants attached to their opposition testimony of the Pension Plan's person most qualified witness designee that

---

[4] Mr. Bondanelli's testimony at past § 341(a) meeting of creditors sessions, Rule 2004 examinations, and depositions would be admissible in all of the avoidance actions, without the Trustee's ability to cross-examine him on such testimony, as he is now deceased. *See* Civil Rule 32(a)(1) and (4)(A); *Key Bank of Me. v. Jost (In re Jost),* 136 F.3d 1455, 1459 (11th Cir. 1998). This would hurt the Trustee's likelihood of success.

corroborated his testimony. Moreover, the checks issued to the Pension Plan are attached to the Trustee's complaint, and their memo sections state that the transfers were for "repayment of loans" or "reimbursement."

When assessing the Settlement, the bankruptcy court did not need to rule on the disputed facts and questions of law; rather, it was required merely to canvass the issues–which it did. *See Burton v. Ulrich (In re Schmitt),* 215 B.R. 417, 423 (9th Cir. BAP 1997). And it did so on an independent, informed basis after reviewing the moving and opposing papers and presiding over the litigation for nearly two years.

**Complexity, Expense, Inconvenience, and Delay of Litigation**

The avoidance actions were on the brink of trial. Thus, the delay caused by litigation was not a driving factor in the bankruptcy court's decision. That said, however, cost in particular remained an issue. Trials are expensive. And the cost, inconvenience, and delay of collecting on any judgment against Defendants were reasonably assumed to be significant for the reasons set forth above.

**Interests of Creditors**

"The opposition of the creditors of the estate to approval of a compromise may be considered by the court, but is not controlling *and will not prevent approval of the compromise where it is evident that the litigation would be unsuccessful and costly." Official Unsecured Creditors' Comm. v. Beverly Almont Co. (In re The Gen. Store of Beverly Hills)*, 11 B.R. 539, 541

11

(9th Cir. BAP 1981) (emphasis added). In short, creditors have a voice but not a veto. Thus, a bankruptcy court may approve a settlement even over strenuous creditor objections.

Appellants assert that the bankruptcy court did not give their objection due deference. We disagree; the court heard and considered all of their arguments at the hearing. It simply disagreed with their view that the Settlement was not fair, equitable, or in their best interest. In the bankruptcy court's view, "the paramount interest of creditors is to resolve this litigation and try and solve these cases so that funds can be distributed to creditors. And so [the court thinks] that the settlement is actually in the interests of creditors." This was not error.

Neither was it reversible error when the bankruptcy court stated that it could not replace the Trustee's business judgment with its own. *See In re Rake*, 363 B.R. 146, 152 (Bankr. D. Idaho 2007). Despite the court's remark during the heat of oral argument, the record shows that it did not abdicate its duty to undertake its own informed and independent judgment as to whether the settlement was fair and equitable.

## CONCLUSION

The bankruptcy court did not abuse its discretion. We AFFIRM.