

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

|  |  |
|---|---|
| In re:<br>PRIME METALS U.S.A., INC.,<br>     Debtor. | BAP No. CC-22-1222-CFL<br><br>Bk. No. 8:17-bk-14535-SC |
| RICHARD A MARSHACK, solely in his capacity as Chapter 7 Trustee of the bankruptcy estate of Prime Metals, U.S.A., Inc.,<br>     Appellant,<br>v.<br>HYUNDAI STEEL COMPANY, a Korean corporation,<br>     Appellee. | Adv. No. 8:19-ap-01216-SC<br><br><br><br>**MEMORANDUM**<sup>*</sup> |

Appeal from the United States Bankruptcy Court
for the Central District of California
Scott C. Clarkson, Bankruptcy Judge, Presiding

Before: CORBIT, FARIS, and LAFFERTY, Bankruptcy Judges.

---

 <sup>*</sup> This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

## INTRODUCTION

Chapter 7[1] trustee Richard A. Marshack ("Trustee") appeals the bankruptcy court's order granting summary judgment to creditor Hyundai Steel Company ("Hyundai"). The bankruptcy court did not err. We AFFIRM.

## FACTS

### A. Prime's history prior to bankruptcy.

Prime Metals U.S.A., Inc. ("Prime") was a California company started in 2008. Prime was engaged in trading and processing scrap metal. In July of 2012, Hyundai began purchasing scrap steel from Prime. Hyundai became Prime's largest customer, accounting for more than 80% of Prime's sales. Thereafter, Prime entered into a series of transactions that had little apparent business logic and may (or may not) have benefitted Hyundai.

### 1. Prime acquires the CMI Notes.

In 2014, Prime acquired certain promissory notes ("CMI Notes") evidencing loans in a total principal amount of $17 million issued by a third-party bank to Prime's competitor Central Metal, Inc. ("CMI Borrowers"). The CMI Notes were secured by deeds of trust on three pieces of commercial real estate in California ("Property"). Prime acquired the

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, all "Civil Rule" references are to the Federal Rules of Civil Procedure, all "Fed. R. Evid." references are to the Federal Rules of Evidence, and all "Cal. Civ. Code" references are to the California Civil Code.

CMI Notes from MKLUS LLC, for $17,717,458.94. At the time Prime acquired the CMI Notes, the CMI Borrowers were in default.

Prime obtained a bank loan from Shinhan Bank in Seoul, South Korea in the amount of $17,500,000 to fund the CMI Notes purchase. Hyundai guaranteed the loan.

In return for the guaranty, Prime agreed to pay Hyundai an annual fee equal to 0.15% per annum of $17.5 million for the period the guaranty remained outstanding. Prime's loan from Shinhan Bank had a variable interest rate. The original interest rate on the CMI Notes was 9%. However, after Prime acquired the CMI Notes, Prime reduced the interest rate charged to the CMI Borrowers to 3.2%.

**2.    Prime enters into a forbearance agreement with the CMI Borrowers.**

The CMI Borrowers did not always make timely payments. Consequently, Prime and the CMI Borrowers entered into a forbearance and modification agreement ("Forbearance Agreement") on February 17, 2015. The Forbearance Agreement further reduced the interest rate charged and extended the maturity date. The Forbearance Agreement was amended in October 2015 and again in January 2016.

**3.    Prime signs a deed of guarantee benefiting Hyundai.**

On March 26, 2015, Prime signed a deed of guarantee, guaranteeing the performance of an unrelated entity, More Steel Co. Ltd. ("More Steel"), under contracts between Hyundai and More Steel. To secure its obligations

3

under the deed of guarantee, Prime agreed to "transfer, assign, and convey" a security interest in all of its assets to Hyundai.

### 4.     R-Techo purchases Prime.

On July 30, 2015, for $650,000, R-Techo Co., Ltd. ("R-Techo"), a South Korean corporation, acquired all the issued and outstanding capital stock of Prime, and Prime became a wholly owned subsidiary of R-Techo.

### 5.     Prime enters into supply and purchase contracts with Hyundai

Although Hyundai and Prime had been engaging in trade since 2012 without a supply contract, on October 1, 2015, Hyundai and Prime entered into a one-year supply contract ("Supply Contract") wherein Hyundai agreed to purchase, and Prime agreed to sell, scrap metal for a one-year term. The Supply Contract automatically renewed on an annual basis unless timely notice of termination was given.

The Supply Contract did not obligate Hyundai to buy any particular quantity of steel and did not set the price or shipment terms. Instead, those terms were contained in purchase contracts that the parties negotiated and entered into each time Hyundai ordered steel from Prime.

From October 2015 through April 2017, Hyundai's purchases of scrap metal from Prime were governed by the Supply Contract and separate purchase agreements for each shipment executed by both Hyundai and Prime.

**6. Prime issues a notice of default to the CMI Borrowers.**

On October 5, 2016, Prime issued a notice of default and demand for payment to the CMI Borrowers. The notice of default indicated that the CMI Borrowers had failed to make the September 22, 2016, quarterly interest payment.

**7. Hyundai acquires the CMI Notes from Prime.**

At the same time Prime issued the notice of default, Hyundai was making efforts to purchase the CMI Notes from Prime. Prime and Hyundai agreed to use the same attorney, Hansin Scott Kim ("Mr. Kim"), to draft a CMI Notes purchase agreement. The parties also agreed that Hyundai would pay all attorney fees related to the transaction.

Additionally, Mr. Kim, on behalf of Hyundai, issued a letter to Bank of Hope (Prime's primary lending bank) strongly encouraging the bank to agree to Prime selling the CMI Notes to Hyundai. The letter warned that the relationship between Prime and Hyundai would be ruined if Prime did not sell.

On December 28, 2016, Hyundai purchased the CMI Notes from Prime, pursuant to a Mortgage Loan Purchase and Sale Agreement. The aggregate outstanding principal of the CMI Notes was $17,518,141.52. Hyundai paid the outstanding balance to Shinhan Bank rather than Prime. Hyundai also paid the other fees related to the transaction.

**8. Hyundai stops purchasing scrap metal from Prime.**

After Hyundai acquired the CMI Notes from Prime, Hyundai stopped purchasing scrap metal from Prime. Hyundai's last purchase from Prime metals was in March 2017. Hyundai did not give Prime notice of any breach of the Supply Contract.

**B.  Prime files a chapter 7 bankruptcy petition.**

On November 17, 2017, Prime filed a voluntary chapter 7 bankruptcy petition. The bankruptcy petition, schedules, and statement of financial affairs were signed by Ik Dong Kim ("I.D. Kim") as President. I.D. Kim was also the founder and chairman of R-Techo, Prime's parent company.

**C.  Trustee files an adversary complaint against Hyundai.**

Trustee filed an adversary complaint ("Complaint") against Hyundai that (as amended) alleged eleven claims for relief: (1) avoidance and recovery of intentional fraudulent transfers pursuant to §§ 544, 548, 550, and 551; Cal. Civ. Code §§ 3439.04, 3439.07, 3439.08, and 3439.09; (2) avoidance and recovery of constructive fraudulent transfers pursuant to §§ 544, 548, 550, and 551; Cal. Civ. Code §§ 3439.04, 3439.07, 3439.08, and 3439.09; (3) avoidance and recovery of estate property pursuant to § 542; (4) avoidance of preferential transfers pursuant to § 550; (5) recovery of avoided transfers pursuant to § 550; (6) declaratory judgment regarding the existence of an alter ego relationship between Hyundai and Prime; (7) price fixing and collusion between competitors; (8) attempted monopolization

and conspiracy to monopolize; (9) unfair competition; (10) collusion to restrain trade; and (11) fraud.

Hyundai filed a motion to dismiss the Complaint in its entirety. The bankruptcy court granted Hyundai's motion in part, finding that Trustee's claims 1-6 were adequately pled but dismissed claims 7-11 without leave to amend.[2]

**D.     Trustee's claims that are on appeal.**

Trustee argued that Hyundai conspired with R-Techo and others to manipulate and control the scrap metal steel market to the detriment of Prime. Trustee alleged that because of Hyundai's actions and control of Prime, several pre-petition transfers should be avoided as fraudulent.

**1.     Trustee's claim that Prime fraudulently transferred the CMI Notes to Hyundai.**

The first transfer that Trustee challenged was Prime's sale of the CMI Notes to Hyundai (the "CMI Notes Transfer"). Trustee alleged that first Hyundai caused Prime to borrow over $17 million to acquire the defaulted CMI Notes. Trustee alleged that Hyundai then forced Prime to transfer the CMI Notes to Hyundai for inadequate consideration causing Prime to be overburdened with debt, insolvent, and bankrupt. According to Trustee, Hyundai's manipulation effectively forced Prime "out of business."

---

[2] Trustee does not challenge the dismissal of claims 7-11.

## 2. Trustee's claim that the R-Techo Transfers were fraudulent.

Trustee also alleged that between August 2015 and December 2016, under the pretext of legitimate payments and transactions, Prime transferred $4.8 million to R-Techo, which then transferred $1.8 million of those funds to Hyundai ("R-Techo Transfers").[3] According to Trustee, Hyundai orchestrated the R-Techo Transfers for no consideration and no purpose other than to defraud Prime's creditors. Trustee alleged that Hyundai's reason for using Prime to funnel money to Hyundai was because of an antecedent debt owed to Hyundai by More Steel, an unrelated scrap metal company and competitor of Prime.

## 3. Trustee's claim that Hyundai was the alter ego, statutory, and/or non-statutory insider of Prime.

Trustee insisted that Hyundai was in control of Prime and qualified as a statutory insider under § 101(31)(B)(iii), or a non-statutory insider, sufficient for the bankruptcy court to declare Hyundai the alter ego of Prime.

As evidence, Trustee alleged: (1) Hyundai represented up to 90% of Prime's business, providing Hyundai significant leverage in its dealings

---

[3] Pursuant to Fed. R. Evid. 201(b), we exercise our discretion to take judicial notice of materials electronically filed in the underlying cases. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003). Trustee filed a separate adversary against R-Techo: *Richard A. Marshack v. R-Techo, Co., Ltd.*, Adv. Proc. No. 8:19-ap-01215-SC. Trustee sought to recover approximately $4 million of alleged fraudulent transfers from Prime to R-Techo, the alleged initial transferee. Trustee settled the claim for $50,000 on April 5, 2023.

with Prime; (2) Hyundai owned the majority shares of R-Techo, who in turn owned 100% of Prime's shares; (3) Hyundai controlled several key individuals of Prime, including Min Ho An,[4] a former executive at Hyundai who Hyundai installed at Prime as an executive, I.D. Kim, who was Prime's former CEO and also an executive at R-Techo, and Tae-Ho Cho, R-Techo's President; (4) Min Ho An relayed insider information to Hyundai regarding Prime's finances; (5) Prime's records were stored at Hyundai's office building in Orange County; (6) Hyundai arranged the formation of MKLUS and "MKLUS was one of many alter ego companies of Hyundai that Hyundai used . . . to achieve its improper agendas"; (7) Hyundai and Prime were represented by the same attorneys during the negotiations for the CMI Notes Transfer; (8) Hyundai paid Prime's attorneys' fees indicating that the negotiations were less than arm's length; (9) the CMI Notes Transfer documents were signed by Min Ho An, the same person that Hyundai placed in Prime who would send weekly reports back to Hyundai regarding Prime's financial position; and (10) Hyundai forced Prime to sign the deed of guarantee to ensure Prime helped make up for the losses caused by More Steel.

---

[4] Min Ho An was an executive at Hyundai in South Korea from 1996 to the end of 2013 and then joined Prime as an executive and director at the end of 2014. Trustee alleged that "Hyundai had installed Min Ho An as an executive at Prime to facilitate Hyundai's plan to extract all value from Prime including by price manipulation, indirect ownership of its stock, transfers of assets, and otherwise."

Additionally, Trustee alleged that there was a unity of interest and ownership that existed between Prime and Hyundai such that any separateness ceased to exist and that Hyundai used Prime's assets for its own personal or distinct business use.

### 4. Trustee sought to avoid and recover the alleged fraudulent transfers.

Based on the above allegations, Trustee sought to avoid and recover, for the benefit of the bankruptcy estate, both the CMI Notes Transfer and the R-Techo Transfers as actual or constructive fraudulent transfers. According to Trustee, Hyundai facilitated and orchestrated both the CMI Notes Transfer and the R-Techo Transfers for the benefit of Hyundai without consideration and with the intent to hinder, delay, or defraud Prime's other creditors.

## E. Hyundai's motion for summary judgment

Following the close of discovery, Hyundai filed a motion for summary judgment ("Summary Judgment Motion"). Hyundai argued that Trustee had not presented sufficient evidence to raise a triable issue as to any of the claims.

### 1. Hyundai argued the CMI Notes Transfer was not fraudulent.

Hyundai argued that there was no evidence to support Trustee's assertion that the CMI Notes Transfer should be avoided as an intentional or constructive fraudulent transfer. As to Hyundai's purchase of the CMI Notes from Prime, Hyundai explained that it paid the full par value of the

10

notes plus all costs associated with the transaction (approximately $17,858,430). Hyundai concluded that because it paid all that Prime was entitled to, the CMI Notes Transfer could not be deemed fraudulent, and Hyundai was entitled to summary judgment as a matter of law.

## 2. Hyundai argued that there was no evidence of the R-Techo Transfers.

Hyundai argued that Trustee failed to establish that Hyundai received any funds that were transferred fraudulently from Prime to Hyundai via R-Techo. Hyundai argued that Trustee had not identified, and could not identify, the specific dates or amounts of the alleged R-Techo Transfers. Hyundai noted that Trustee failed to provide any documentary evidence to show that money was transferred from Prime to R-Techo and then from R-Techo to Hyundai.

Accordingly, Hyundai concluded that Trustee failed to establish the elements of an actual or constructive fraudulent transfer claim as to the R-Techo Transfers, and Hyundai was entitled to summary judgment as a matter of law.

## 3. Hyundai argued it was not the alter ego of Prime.

Hyundai also disputed Trustee's allegations regarding any shared ownership or control by Hyundai. Specifically, Hyundai argued: (1) the prices negotiated for scrap steel between Prime and Hyundai were similar to the prices Hyundai paid to other scrap steel suppliers; (2) Hyundai did not jointly operate Prime in any respect and did not co-mingle funds or

assets with Prime; (3) Prime maintained its own books and records, bank accounts, employees and payroll, and there was no overlap with Hyundai; (4) Hyundai does not and did not own any stock in Prime; and (5) Hyundai did not control Prime's employees or insert Hyundai employees into Prime's management.

**F.    The bankruptcy court's hearing on the Summary Judgment Motion.**

Trustee opposed Hyundai's Summary Judgment Motion. At the hearing on the motion, Trustee informed the court and Hyundai that he was abandoning the preference claims. As to the remaining claims, Trustee seemed to acknowledge his lack of objective evidence and documents but argued that this was the very reason a trial was necessary. Trustee opined that no one was cooperating with his investigation and that getting testimony and documentary evidence had been difficult given that Prime's sole shareholder was R-Techo, and R-Techo was ostensibly acting in support of Hyundai. Trustee also stated that almost no one was in the United States: "they're all in Korea . . . [and] basically immune from being deposed."

**G.    The bankruptcy court grants Hyundai's Summary Judgment Motion.**

On October 28, 2022, the bankruptcy court entered a memorandum and order granting Hyundai's Summary Judgment Motion. In a footnote, the court denied both Trustee's objections to the court's tentative ruling

and Trustee's request for a hearing. The court also entered an order on the parties' evidentiary objections.

On December 8, 2022, the bankruptcy court entered another order granting Hyundai's Summary Judgment Motion for "the reasons set forth" in the October 28, 2022 memorandum and order (collectively, the "Summary Judgment Order").

## H.     The bankruptcy court's findings and conclusions.

The bankruptcy court stated that although there were "some factual issues as to the level of control over which Hyundai (which represented 90% of Prime's client base) exercised over Prime, its operations, and its employees," there was no genuine dispute of material facts as to each of Trustee's claims. Therefore, Hyundai was entitled to summary judgment as a matter of law.

### 1.     Hyundai did not control Prime.

#### a.     Hyundai was not an insider.

The bankruptcy court determined that Trustee failed to present admissible evidence sufficient to establish a triable issue of material fact as to Hyundai's alleged dominance and control over Prime. Accordingly, the bankruptcy court determined that Trustee failed to establish genuine disputes of material fact as to Hyundai's insider status and therefore Hyundai was entitled to summary judgment as a matter of law.

Specifically, the bankruptcy court found that: (1) Hyundai did not own any shares in R-Techo or Prime; (2) Prime's employee Min Ho An and

13

R-Techo's employees were not controlled by Hyundai; (3) Prime's business records were not stored at a facility Hyundai leased; and Hyundai and Prime were not represented by the same attorneys during negotiations relating to the CMI Notes Transfer. The bankruptcy court determined that although Hyundai was a large customer, received financial reports from Prime, and paid legal expenses related to the CMI Notes Transfer, those facts were not sufficient to generate a genuine dispute of material fact about insider status.

### b. Hyundai was not Prime's alter ego.

The bankruptcy court determined that Trustee's burden on an alter ego claim was even higher than Trustee's burden to establish that Hyundai was a statutory or non-statutory insider. Because the bankruptcy court had already determined that Trustee failed to establish that Hyundai was either a statutory or a non-statutory insider of Prime, the bankruptcy court determined that Trustee also failed to establish a genuine dispute of fact as to whether Hyundai was Prime's alter ego.

### 2. Trustee failed to establish genuine disputes of material fact regarding the alleged fraudulent transfers.

### a. The CMI Notes Transfer was not fraudulent.

The bankruptcy court determined that Trustee failed to establish that Prime transferred the CMI Notes with the intent to hinder, delay, or defraud other creditors because Trustee had not established a genuine

14

dispute of material fact as to whether Prime received reasonably equivalent value when it sold the CMI Notes.

The bankruptcy court found that Prime sold the non-performing CMI Notes to Hyundai at par value. Because Prime received reasonably equivalent value for the CMI Notes, the bankruptcy court determined that Trustee failed to establish a genuine dispute of material fact as to one of the necessary elements of a fraudulent transfer claim related to the CMI Notes transfer, and therefore Hyundai was entitled to summary judgment as a matter of law.

### b. Trustee failed to establish the existence of the R-Techo Transfers.

With respect to the alleged R-Techo Transfers, the bankruptcy court determined that Trustee failed to establish a genuine dispute of material fact as to whether there was a transfer of Prime's property. The bankruptcy court found that Trustee produced no documentary evidence of the alleged transfers of $1.8 million from Prime to R-Techo and then from R-Techo to Hyundai. The bankruptcy court determined that because Trustee failed to establish a genuine dispute of material fact in relation to the dates, amounts, and reasons why R-Techo allegedly made the R-Techo Transfers, Hyundai was entitled to summary judgment as a matter of law on the Trustee's fraudulent transfer claims related to the R-Techo Transfers.

Trustee timely appealed.

15

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A), (H). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Did the bankruptcy court err in excluding evidence offered by Trustee?

Did the bankruptcy court err in granting summary judgment to Hyundai on Trustee's claim that the R-Techo Transfers were constructively fraudulent?

Did the bankruptcy court err in granting summary judgment to Hyundai on Trustee's claim that the R-Techo Transfers were actually fraudulent?

Did the bankruptcy court err in granting summary judgment to Hyundai on Trustee's claim that the CMI Notes Transfer was constructively fraudulent?

Did the bankruptcy court err in granting summary judgment to Hyundai on Trustee's claim that the CMI Notes Transfer was actually fraudulent?

Did the bankruptcy court err in granting summary judgment to Hyundai on Trustee's claim that Hyundai was Prime's alter ego?

## STANDARDS OF REVIEW

We review de novo a bankruptcy court's decision to grant summary judgment. *Wood v. Stratos Prod. Dev. (In re Ahaza Sys., Inc.)*, 482 F.3d 1118,

16

1123 (9th Cir. 2007). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

"We review evidentiary rulings for abuse of discretion and reverse if the exercise of discretion is both erroneous and prejudicial." *Wagner v. Cnty. of Maricopa*, 747 F.3d 1048, 1052 (9th Cir. 2013). To be considered on a motion for summary judgment, the evidence must be admissible. *See* Civil Rule 56(c), (e)(1) (requiring the party asserting a fact to support that fact with admissible evidence).

## DISCUSSION

### A. Summary judgment standard.

Civil Rule 56(c) (applicable through Rule 7056) provides that summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute over material facts is "genuine" where a reasonable jury could return a verdict for the nonmoving party based on the evidence presented. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001). A fact is "material" if it could affect the outcome of the case under the controlling substantive law. *Anderson*, 477 U.S. at 248; *Far Out Prods., Inc.*, 247 F.3d at 992.

Hyundai, as the moving party, did not bear the ultimate burden of persuasion at trial. However, it carried both the burden of production and the burden of persuasion on its motion for summary judgment. *Friedman v.*

17

*Live Nation Merch., Inc.*, 833 F.3d 1180, 1188 (9th Cir. 2016) (citing *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000)). To carry the burden of production, Hyundai had to "either produce evidence negating an essential element of the nonmoving party's claim . . . or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine*, 210 F.3d at 1102-03. To successfully carry the burden of persuasion, Hyundai had to show the court that no genuine dispute of material fact existed. *Id.* at 1102.

If Hyundai satisfied its initial burdens, then the burden shifted to the nonmoving party (Trustee) to identify with reasonable particularity enough admissible evidence supporting its claims to create a genuine dispute of material fact. *Id*. To meet that burden, the Trustee's evidence must be substantial; a "scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." *Addisu v. Fred Meyer, Inc.*, 198 F. 3d 1130, 1134 (9th Cir. 2000). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial" and summary judgment is appropriate. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted).

When deciding a summary judgment motion, the bankruptcy court must view the evidence in the light most favorable to the non-moving

18

party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). A court "generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented[.]" *Agosto v. Immigr. & Naturalization Serv.*, 436 U.S. 748, 756 (1978). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. However, even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation. *Gertsch v. Johnson & Johnson, Fin. Corp. (In re Gertsch)*, 237 B.R. 160, 165 (9th Cir. BAP 1999).

## B. The bankruptcy court's evidentiary rulings.

On appeal, Trustee argues that the bankruptcy court's evidentiary rulings were erroneous. Trustee's chief witness was Min Ho An, who was employed by Hyundai in South Korea as deputy manager from 1996-2013 and then worked for Prime as Secretary and Chief Operating Officer from 2014-2017. Hyundai objected to the majority of Min Ho An's declaration and deposition testimony on the basis of hearsay and lack of personal knowledge, foundation, and relevance.

The bankruptcy court sustained most of Hyundai's evidentiary objections.[5] The bankruptcy court's order on evidentiary objections did not include any reasoning or rationale for its ruling. The bankruptcy court even sustained Hyundai's objection to the first paragraph of Min Ho An's declaration: "Unless otherwise stated, I have personal knowledge of the facts set forth herein. I am over 18 years of age, and if called to testify, then I could and would competently testify hereto." This is standard verbiage for an initial statement to a declaration, and without being provided any rationale or reasoning, we are unable to discern the bankruptcy court's basis for sustaining Hyundai's objection to this paragraph or any of its other evidentiary rulings.

Because this case was disposed of on summary judgment, the bankruptcy court was not tasked with determining the credibility or truthfulness of the declarants or their statements. Indeed, "[t]he evidence of the non-movant is to be believed" by the court, "and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The weighing of evidence and the drawing of legitimate inferences are functions of the trier of fact and are not appropriate for resolution by the court on summary judgment. *See id.*

A review of the record reveals that the bankruptcy court likely made improper determinations regarding credibility, truthfulness, relevance, and

---

[5] Additionally, the bankruptcy court overruled the majority of Trustee's evidentiary objections.

personal knowledge. However, even if we consider all the evidence submitted by Trustee, Trustee did not offer evidence sufficient to support every element of any of the claims in the Complaint. Therefore, the bankruptcy court's evidentiary rulings, even if erroneous, were "more probably than not harmless." *Haddad v. Lockheed Cal. Corp.*, 720 F.2d 1454, 1457 (9th Cir. 1983).

## C.   The bankruptcy court did not err in granting Hyundai summary judgment on Trustee's claims of fraudulent transfers.

The Bankruptcy Code permits trustees to enlarge the debtor's estate by invalidating fraudulent transfers under both federal and state law, thereby making the property a part of the debtor's estate again.[6] *See EPD Inv. Co. v. Bank of Am. Corp. (In re EPD Inv. Co.)*, 523 B.R. 680, 685 (9th Cir. BAP 2015). California's fraudulent transfer act and the federal Bankruptcy Code's fraudulent transfer provisions are almost identical in form and substance; therefore, we draw upon cases interpreting both. *Barclay v. Mackenzie (In re AFI Holding, Inc.)*, 525 F.3d 700, 703 (9th Cir. 2008). To avoid a transfer as fraudulent, Trustee bears the burden of proof under the preponderance of the evidence standard. *Gill v. Stern (In re Stern)*, 345 F.3d 1036, 1043 (9th Cir. 2003).

---

[6] Where a transfer has been avoided under §§ 544 or 548, § 550(a) authorizes the trustee to "recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property . . . ." Section 551 provides that any transfer avoided under §§ 544 or 548 "is preserved for the benefit of the estate but only with respect to property of the estate."

Trustee argues that the CMI Notes Transfer and the R-Techo Transfers were actually or constructively fraudulent under § 548(a)(1) and the California Uniform Voidable Transfer Act because the purpose of the transfers was to keep Prime's assets beyond creditors' reach. § 548(a)(1); Cal. Civ. Code §§ 3439-3439.14. Trustee argues that he offered sufficient evidence to demonstrate that the transfers involved actual and constructive fraud.

### 1. The transfers were not actually fraudulent.

Section 548 allows a trustee to avoid any transfer of an interest of the debtor in property if the debtor made such transfer with actual intent to hinder, delay, or defraud any creditor. § 548(a)(1)(A). The elements necessary for a trustee to establish an avoidance action based on actual fraud are essentially the same for bankruptcy law and California law. *See* § 548(a)(1)(A); Cal. Civ. Code § 3439.04(a). To prevail, Trustee must prove that: (1) there was a transfer; (2) of Prime's property; (3) during the applicable lookback period – two years prior to the petition date for § 548, and four years prior to the petition date for Cal. Civ. Code § 3439.04(a); and (4) Prime made the transfer with actual intent to hinder, delay, or defraud any of Prime's creditors. *See Argyle Online, LLC v. Nielson (In re GGW Brands, LLC)*, 504 B.R. 577, 607 (Bankr. C.D. Cal. 2013).

"Since direct evidence of intent to hinder, delay or defraud is uncommon, the determination typically is made inferentially from circumstances consistent with the requisite intent." *Wolkowitz v. Beverly (In*

22

*re Beverly*), 374 B.R. 221, 235 (9th Cir. BAP 2007), *aff'd in part, dismissed in part*, 551 F.3d 1092 (9th Cir. 2008). When determining the debtor's actual intent, courts may consider certain "badges of fraud." *Ezra v. Seror (In re Ezra*), 537 B.R. 924, 930-31 (9th Cir. BAP 2015); *see* Cal. Civ. Code § 3439.04(b).

### a. The CMI Notes Transfer was not actually fraudulent.

To succeed on the avoidance action based on actual fraud as to the CMI Notes Transfer, Trustee had to demonstrate that Prime transferred the CMI Notes intending to hinder, delay, or defraud creditors. Trustee argues the evidence shows that Hyundai wanted the CMI Notes and forced Prime to first purchase the CMI Notes and then later sell them to Hyundai, rather than allowing Prime to keep the defaulted notes. According to Trustee, Prime's selling of the defaulted CMI Notes was not for any legitimate purpose, rather it was for the purpose of defrauding Prime's creditors.

Trustee is correct that it is unclear and perhaps even suspicious that Prime, a scrap metals business with many outstanding (and defaulted) loans of its own, decided to purchase defaulted secured loans for $17.5 million. Trustee may also be correct that Prime only made the decision to acquire the CMI Notes because of Hyundai.[7] However, Prime's business decision to acquire the CMI Notes and subsequently sell the CMI Notes

---

[7] Hyundai argues that Prime made money on the CMI Notes; however, neither party produced the Shinhan loan documents or any documentary evidence showing the CMI Borrowers' payments (or lack thereof) to Prime for the period that Prime held the CMI Notes. Thus, there is no objective evidence to support or refute Hyundai's claim.

was not before the bankruptcy court. Rather, the issue was whether Prime intended to hinder, delay, or defraud other creditors when it sold the CMI Notes to Hyundai.

A review of the entire record demonstrates that Trustee offered evidence of the facts of the transfer only. Beyond supposition and conjecture, Trustee did not proffer objective evidence in support of his assertion that the purpose or intent of Prime when it sold the CMI Notes to Hyundai was to hinder, delay, or defraud creditors. Because Trustee failed to offer evidence sufficient to support such a finding, the bankruptcy court did not err in granting Hyundai summary judgment on this claim.

### b. The R-Techo Transfers were not actually fraudulent.

Similar to Trustee's argument regarding the CMI Transfers, Trustee argues that he offered sufficient evidence demonstrating that Prime transferred $1.8 million to Hyundai via R-Techo for the purpose of defrauding other creditors.

Importantly, a basic element of a claim for fraudulent transfer is the actual transfer. At a minimum, for a fraudulent transfer to occur, there must be a "transfer" of a debtor's "asset."[8]

---

[8] "'Transfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, license, and creation of a lien or other encumbrance." *Stadtmueller v. Sarkisian (In re Medina)*, 619 B.R. 236, 240 (9th Cir. BAP 2020) (quoting Cal. Civ. Code § 3439.01(m)), *aff'd*, No. 20-60045, 2021 WL 3214757 (9th Cir. July 29, 2021). "'Asset' means property of a debtor," subject to certain statutory exceptions. Id. (quoting Cal. Civ. Code § 3439.01(a)).

We agree that Trustee's evidence indicates there may have been a scheme for Hyundai to somehow recoup its alleged losses caused by More Steel. Indeed, in his deposition, Min Ho An appears to admit to the scheme. However, his later declaration partially contradicts his deposition testimony. Nevertheless, even if we do not discount his deposition testimony, his general averments are "a world apart from" the "'specific facts needed to sustain the complaint." *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

Trustee, contrary to his assertions, did not present evidence and did not allege that he could produce evidence that the scheme was accomplished or that Prime transferred its assets (as opposed to R-Techo's) to Hyundai for the actual purpose of defrauding creditors. Indeed, Trustee failed to offer evidence of the timing of the alleged transfers, or the manner or process of the alleged transfers. For example, was it a transfer of money, or was it an agreement to accept low purchase pricing on scrap iron?

Based on an independent review of the entire record, without making credibility determinations, and viewing the evidence in the light most favorable to Trustee, we determine that Trustee failed to offer sufficient evidence showing "when" and "how" the alleged R-Techo Transfers occurred. Therefore, Hyundai carried its summary judgment burden by demonstrating that Trustee failed make a sufficient showing on an essential element of his case with respect to which Trustee had the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (explaining "a complete

failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial"). Accordingly, the bankruptcy court did not err in granting Hyundai summary judgment on this claim.

## 2. The transfers were not constructively fraudulent.

A trustee in possession may bring an action to avoid a prepetition transfer that is alleged to be constructively fraudulent under § 548(a)(1)(B) or applicable state law as provided in § 544(b)(1).[9] To avoid the transfers, Trustee had to show: (1) there was a transfer of Prime's property; (2) during the applicable lookback period; (3) Prime received less than reasonably equivalent value in exchange for the transfer; and (4) Prime was insolvent, made insolvent by the transfers, operating or about to operate without sufficient capital, or unable to pay its debts as they become due. *See Hasse v. Rainsdon (In re Pringle)*, 495 B.R. 447, 462-63 (9th Cir. BAP 2013); § 548(a)(1)(B)(i)-(ii)(I)-(III); Cal. Civ. Code § 3439.05(a).

### a. The CMI Notes Transfer was not constructively fraudulent.

If Prime received reasonably equivalent value for the CMI Notes, then the CMI Notes Transfer was not constructively fraudulent. The court employs a two-step process in determining whether a debtor received a reasonably equivalent value. *Jordan v. Kroneberger (In re Jordan)*, 392 B.R.

---

[9] California law is substantially similar. *See* Cal. Civ. Code § 3439.05(a).

428, 441 (Bankr. D. Idaho 2008). First, the court must determine whether the debtor received value. If the debtor received value for a transfer, the court must then determine whether that value was the reasonable equivalent of what the debtor gave up. *Id.*

An independent review of the record demonstrates that Trustee failed to offer any evidence showing that the amount paid for the CMI Notes was less than the "reasonably equivalent value" of those notes.

Hyundai purchased the CMI Notes from Prime for the outstanding balance of the CMI Notes along with other fees related to the transaction. Hyundai paid the funds to Shinhan Bank rather than Prime. Trustee provided no evidence to the contrary. Regardless that the payment was made to Shinhan Bank rather than to Prime, Prime received value because its debt to Shinhan Bank was satisfied. *See id.* ("[v]alue is defined . . . as property, or the satisfaction or securing of a present or antecedent debt of the debtor") (quotation marks omitted). Furthermore, because Prime received the par value of the CMI Notes, it is without reasonable doubt that the value it received was reasonably equivalent to what it gave up. *See id.*

Therefore, Trustee did not present sufficient evidence for a reasonable trier of fact to find that Prime received less than reasonably equivalent value as to the CMI Notes. Accordingly, Hyundai carried its summary judgment burden by demonstrating that Trustee failed to produce evidence of one of the necessary elements of a constructive fraud claim.

27

### b. The R-Techo Transfers were not constructively fraudulent.

Trustee also fails to establish a genuine dispute regarding the alleged constructively fraudulent R-Techo Transfers. Because of the same lack of evidence discussed in the previous actual fraud section, Trustee has not established the elements for an avoidance action based on constructive fraud as to the R-Techo Transfers.

Therefore, based on our independent review of the record, the bankruptcy court did not err in granting Hyundai summary judgment on Trustee's claim of constructive fraud as to the R-Techo Transfers.

## D. Hyundai was not Prime's alter ego.

On appeal, Trustee argues that the bankruptcy court erred in refusing to declare Hyundai the alter ego of Prime. Alter ego has been described as "an extreme remedy, sparingly used." *Sonora Diamond Corp. v. Superior Ct.*, 83 Cal. App. 4th 523, 539 (2000). It is to be imposed "cautiously" and "reluctantly." *Highland Springs Conf. & Training Ctr. v. City of Banning*, 244 Cal. App. 4th 267, 281 (2016). Among the factors to be considered in applying the doctrine are commingling of funds and other assets of the two entities, the identical equitable ownership in the two entities, the use of the same offices and employees, the lack of segregation of corporate records, and identical directors and officers. *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1285 (1994).

In this case, Trustee provided evidence demonstrating that Hyundai had some influence over Prime's business dealings and decisions. However, this is woefully short of the evidence necessary to establish that Hyundai was Prime's alter ego. Based on our independent review of the record, Trustee did not present evidence sufficient to establish a genuine dispute of material fact relating to the elements of an alter ego claim. Accordingly, the bankruptcy court did not err in granting Hyundai summary judgment on the alter ego claim.

## CONCLUSION

Based on our independent review, we conclude that the bankruptcy court did not err in granting Hyundai's Summary Judgment Motion. We AFFIRM.